**Alvin Wayne CRANE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 69977.

Court of Criminal Appeals of Texas, En Banc.

Jan. 31, 1990.

Rehearing Denied March 28, 1990.

Gene Storrs, Amarillo, for appellant.

Bruce Roberson, County Atty., Perryton, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

This case was tried on a change of venue from Ochiltree County to Denton County. Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, § 19.03(a)(1). After finding the appellant guilty, the jury returned affirmative findings to the special issues under Article 37.071, V.A.C.C.P. Punishment was assessed at death.

Appellant raises eight points of error. He challenges: the exclusion of two veniremembers who were excused for cause based on their bias against the imposition of the death penalty; the exclusion of one veniremember for cause based on her intent to require that the State show evidence of premeditation; the trial court's admission into evidence of items seized from appellant's automobile as a result of an illegal arrest; the admission of a witness's identification of appellant, arguing that the trial court erred in failing to grant appellant's motion for mistrial; the trial court's admission of evidence of extraneous offenses during the guilt/innocence stage to show motive; the trial court's admission of a tape recording of a conversation between a police officer and a radio dispatcher and a transcription of that recording; exclusion of a transcription made of tape recordings of phone calls between appellant and his wife; and finally, the sufficiency of the evidence to support an affirmative finding to special punishment issue number two. We will affirm.

On March 28, 1987, Melvin K. Drum, the deceased, was employed as Chief Deputy Sheriff of Ochiltree County, Texas. Several calls were made to Drum's residence that day concerning the activities of the appellant. The calls concerned a domestic dispute between the appellant and his wife, Linda Crane, and threatening calls made by the appellant to the residence of Mr. Gayle Rogers, the business manager of Mrs. Crane's employer.

Mrs. Crane was employed as a practical nurse at the home of Mrs. Spicer, an elderly invalid. Appellant had visited the Spicer home earlier in the day and had an argument with his wife. Appellant then smashed the windows of his wife's car as she sat in the car and the police were called. Appellant departed before the arrival of the police. Later, the appellant called Mr. Rogers' home, demanding his wife's check, although it was not yet due to be issued. The deceased and his son, Delvin Drum, an Ochiltree deputy sheriff, upon being informed of the appellant's activities, left the Drum residence to investigate. The officers departed in separate vehicles, the deceased driving an unmarked vehicle.

At trial, Sherry Vance testified that she lived across the street from the Spicer residence. On the day of the homicide, she testified that at approximately 1:25 p.m., she heard the short beep of a siren. She went to the window and observed a green car pull into the Spicer driveway. A red car, driven by the deceased, pulled in near the Spicer residence.

Ms. Vance testified that she saw the appellant's wife approach the decedent's car. Vance then saw the appellant with a shotgun. Appellant pointed the shotgun at the deceased. His wife grabbed him, shook him, and told him, "No." She then went back toward the Spicer residence. Appellant then shot the deceased who was seated in his car. Vance saw the impact of the shot on the deceased's body. The appellant then fled.

Bruce Evans, an Ochiltree County deputy, testified that when he arrived the red "kojak" light on the dashboard was still flashing. Delvin Drum testified that when he arrived, his father was slumped over in the car. The deceased's badge was plainly visible. Melvin Drum was wearing a holstered service revolver.

Based on a police broadcast, appellant was arrested by Oklahoma authorities two and a half hours later at a roadblock in Beaver County, Oklahoma for the murder of Melvin Drum.

In his first point of error, appellant alleges that the trial court erred when it excused two prospective jurors for cause based on their alleged bias against the im-

position of the death penalty. Appellant contends that veniremembers Traynor and Conley should not have been excused because their bias against the death penalty was not "unmistakably clear." He argues that it was not demonstrated that the two veniremembers were "unwilling or unable to obey the law or follow their oath," citing *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). The State responds that it need only show that the veniremember's view on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," citing *Cuevas v. State*, 742 S.W.2d 331, 334 (Tex.Cr.App.1987), *cert. denied*, 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988).

At the beginning of voir dire examination of Ms. Traynor, the State asked the following:

Q: [By Mr. Cobb, Prosecutor] As I understand what you checked is "I would never under any circumstances return a verdict which assessed the death penalty". Is that correct?

A: That's correct.

Q: Can you tell me what that feeling is based on?

A: Well, I just don't feel that I as an individual or anyone, or any other individual, has the right to determine somebody's death.

Q: Is that a personal feeling? Is that a religious feeling? I mean, is it based on some religious concept, just your own personal feelings, or a combination of them?

A: It's a combination of both.

Q: Okay. Has there ever been a time in your life where you did believe that the death penalty was appropriate?

A: No, I don't believe so.

Q: Okay. Would you—would the—would your opposition to the death penalty be true under any set of circumstances?

A: I think so. I can't think of any circumstances that I would feel otherwise.

During her examination, Ms. Traynor acknowledged that if she were under oath she might be compelled to answer the special issues affirmatively although she would not want to do so. On further examination by the State, Ms. Traynor stated that unless compelled she could not in good faith take an oath that would result in the death penalty. The State challenged Ms. Traynor for cause based on her opposition to the death penalty. The judge withheld his ruling until the appellant examined the veniremember.

Appellant's attorney attempted to rehabilitate Ms. Traynor. He explained the structure of the trial and the special questions and stressed the fact that the jurors were under oath to follow the law. These arguments did not persuade Ms. Traynor. She continued to assert that she could not answer all the questions affirmatively, if it would result in the death penalty:

Q: [Mr. Cross, Defendant's attorney] Or are your feelings so strong that no matter what the evidence proves to you, no matter that it's proven to you beyond a reasonable doubt, you're always going to answer the questions in a certain way regardless of what the evidence is?

A: I don't think I could answer all three of those questions "yes" knowing that it meant the death penalty.

Q: No matter what the evidence was?

A: Right.

Q: No matter what the facts were?

A: Right. I think my feeling is that I would be—I would be swayed towards answering at least one "no".

■ The United States Supreme Court has determined that a prospective juror may be subjected to a challenge for cause based upon that juror's views on the death penalty when the record shows that the prospective juror's views would "prevent or substantially impair the performance of his or her duties in accordance with the oath taken and the trial judge's instructions." *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *see also Bennett v. State*, 742 S.W.2d 664, 674 (Tex. Cr.App.1987), 486 U.S. 1051, 108 S.Ct. 2815, 100 L.Ed.2d 917 (1988), *aff'd*, 766 S.W.2d

227 (Tex.Cr.App.1989). A trial court's decision to excuse such a potential juror for cause under *Witt* should not be reversed absent a clear abuse of discretion. *Ransom v. State,* No. 69–338, slip op. at 17 (Tex.Cr.App. June 14, 1989). A reviewing court should consider the voir dire as a whole, giving due deference to the ruling of the trial court. Id.

In the instant case, prospective juror Traynor stated that she was opposed to the imposition of the death penalty and would avoid answering all of the special questions affirmatively unless compelled to under oath. On examination by appellant's attorney, Traynor stated she would not answer all the special questions affirmatively, regardless of the evidence or the facts, knowing that affirmative findings would authorize the imposition of the death penalty. In light of these statements, the trial court did not err in sustaining the state's challenge for cause.

Appellant also argues that prospective juror Donley was improperly excused for cause. Donley stated that he was against imposition of the death penalty. He indicated that regardless of the evidence he would always tend to answer at least one of the special questions "no" so that the defendant would not receive the death penalty. He did concede that if it were a unique situation where the defendant was a killer for hire who had repeatedly murdered others, he could impose the death penalty. However, when examined by appellant's attorney, Donley remained steadfast in his opposition to the death penalty.

Based on the responses given by Mr. Donley, we find that the trial court did not err in excusing him. The overall character of the examination of the two veniremembers reveals a deep-seated opposition to the death penalty that would have affected their ability to follow their oaths and the instructions by the trial court. *Bennett,* 742 S.W.2d at 675. We therefore find that the trial court did not err by sustaining the State's challenges for cause. Appellant's first point of error is overruled.

In his second point of error, appellant argues the trial court erred in excluding veniremember Rita Solomon for cause. Appellant maintains that the voir dire examination does not reveal an inability on the part of the prospective juror to follow the law. The State argues that appellant failed to preserve this point of error for review. In the alternative, the State argues that the prospective juror clearly indicated that she would require that the State show evidence of premeditation on the part of the defendant before answering question number one affirmatively, thus displaying an inability to follow the law.

Initially, the State contends that the appellant failed to object properly to the veniremember's exclusion. It is evident from a review of the voir dire examination that both the State and appellant's attorney were concerned about Ms. Solomon's statements indicating that she would hold the State to a more stringent standard of proof than that required by law. Specifically, she stated she would require that the State show some evidence of premeditation before answering "yes" to Question Number One at the punishment stage. After examination by the State and questions by the trial court, Solomon was asked the following by appellant's attorney:

Q: [By Mr. Cross, appellant's attorney] When we are talking about premeditation, in your mind, are we talking about the same thing as pre-thought, or are we talking about something different?

A: Premeditation would be like a plan.

Q: Okay, Is that any different than pre-thought to you?

A: No.

Q: Okay. And in your mind, then, does deliberately—just a moment, let me see if I can get my question phrased properly—

A: Okay.

Q: Is premeditation included in your definition of deliberately, although it might not be all of your definition of deliberately?

A: Yes.

THE COURT: I'm sorry. What was your answer?

A: Yes.

THE COURT: Yes?

A: Yes.

MR. CROSS: *We'll submit the juror is qualified,* Your Honor.

MR. ROBERSON: We renew the challenge, Your Honor.

THE COURT: Are you saying that you would require the State to prove premeditation in order to answer Question Number One "yes"?

A: Yes.

[Emphasis added].

After this exchange, the trial court excused Solomon for cause.

■ If an appellant does not object when a veniremember is excused for cause, he may not challenge that ruling on appeal. *Purtell v. State,* 761 S.W.2d 360, 365 (Tex. Cr.App.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989). In order to perfect an issue for appeal, an objection is "required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it." *Purtell,* 761 S.W.2d at 365; *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Cr.App. 1977). The objection should "afford opposing counsel an opportunity to remove the objection or supply other testimony." *Purtell,* 761 S.W.2d at 366.

■ Appellant's statement was sufficient in this case to preserve the error when he stated "We'll submit the juror is qualified, Your Honor." It was apparent from the voir dire examination that the trial judge was informed that the appellant was resisting a challenge for cause concerning the veniremember's intention to hold the State to a higher burden of proof in the punishment phase than that required by law. Therefore, the second point of error is preserved for review.

Turning to the merits of appellant's second point of error, the State concedes, and it is apparent, that Solomon did vacillate on the issue of whether she would require proof of premeditation as it applied to the guilt/innocence phase. However, there was no such vacillation concerning the punishment phase.

In the instant case, the prospective juror stated that she would not answer Question Number One affirmatively without evidence of premeditation on the part of defendant:

Q: Is premeditation included in your definition of deliberately, although it might not be all of your definition of deliberately?

A: Yes.

THE COURT: I'm sorry. What was your answer?

A: Yes.

THE COURT: Yes?

A: Yes.

MR. CROSS: We'll submit the juror is qualified, Your Honor.

MR. ROBERSON: We renew the challenge, Your Honor.

THE COURT: Are you saying that you would require the State to prove premeditation in order to answer Question Number One "yes"?

A: Yes.

■ It is clear that a prospective juror is subject to a challenge for cause by the State if the juror "has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment." V.A.C.C.P. 35.16(b)(3); *Franklin v. State,* 693 S.W.2d 420, 424 (Tex.Cr.App.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986). The State is entitled to have the trial court exclude for cause any prospective juror who would hold the State to a more stringent burden of proof than that required by law. *Jackson v. State,* 745 S.W.2d 4, 16–17 (Tex.Cr.App.1988), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988); *Wilkerson v. State,* 726 S.W.2d 542, 545–546 (Tex.Cr.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Franklin v. State,* 693 S.W.2d at 424. Premeditation is not an element of murder and a veniremember who would require such proof is properly excused. *Livingston v. State,* 739 S.W.2d 311, 338 (Tex.Cr.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Chambers v. State,* 568 S.W.2d 313,

322 (Tex.Cr.App.1978), *cert. denied,* 440 U.S. 928, 99 S.Ct. 1264, 59 L.Ed.2d 484 (1979), *overruled on other grounds,* 614 S.W.2d 420 (Tex.Cr.App.1980). Therefore, we find that the trial court did not err when it sustained the State's challenge for cause. Appellant's second point of error is overruled.

In his third point of error, appellant alleges that the trial court erred in admitting into evidence items seized from his automobile and his person as a result of an illegal arrest. Appellant argues that his arrest in Oklahoma by an Oklahoma sheriff and an Oklahoma state trooper, pursuant to a Texas police radio broadcast, was not a valid warrantless arrest under Texas law.[1] The State argues that appellant's arrest was valid under Article 14.04, V.A.C.C.P.

■ Generally, police officers must obtain a warrant prior to taking someone into custody. *Dejarnette v. State,* 732 S.W.2d 346, 349 (Tex.Cr.App.1987). Article 14.04 provides one of the exceptions to the general rule which requires that an officer obtain a warrant before effecting an arrest. *Rodriguez v. State,* 715 S.W.2d 843, 845 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd). Under Art. 14.04, there are four basic requirements that must be met: (1) the person who gives the information to the peace officer must be credible; (2) the offense must be a felony; (3) the offender must be about to escape; and (4) there must be no time to procure a warrant. V.A.C.C.P. Art. 14.04; *Fry v. State,* 639 S.W.2d 463, 469 (Tex.Cr.App.1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1430, 75 L.Ed.2d 790 (1983).

Appellant argues that the State has failed to comply with Article 14.04 because appellant was arrested pursuant to a police radio broadcast and telephone messages received by Oklahoma authorities. He argues that there was no showing that there was not ample time to procure an arrest warrant and that this arrest was not justified under the "escape" or "hot pursuit" exceptions. He also argues that this arrest

was invalid because no Texas peace officers were present when the Oklahoma authorities arrested the appellant. Appellant maintains that an Oklahoma sheriff and an Oklahoma state trooper are not peace officers as contemplated under Article 14.04, *supra.*

■ In order for a warrantless arrest or search to be justified, the State must show the existence of probable cause at the time the arrest or search was made and the existence of circumstances which made the procuring of a warrant impracticable. *Washington v. State,* 518 S.W.2d 240, 242 (Tex.Cr.App.1975). The test for probable cause in the case of police broadcasts is the information known to the officer who made the broadcast request. *Williams v. State,* 621 S.W.2d 609, 611 (Tex.Cr.App.1981); *Washington v. State,* 518 S.W.2d 240, 242 (Tex.Cr.App.1975). The requesting officer need not relate all of the relevant facts, but only such information as is necessary for the arresting officer to know who is wanted. *Dotsey v. State,* 630 S.W.2d 343, 347 (Tex.Cr.App.1982). Police broadcasts, based on probable cause, reporting a felony and a description of the suspect satisfy the requirements for arrest under Article 14.-04. *Myre v. State,* 545 S.W.2d 820, 826 (Tex.Cr.App.1977).

■ In the instant case, Officer Roberts, the police officer requesting the broadcast, testified that he arrived at the murder scene within minutes of its occurrence where he was told by appellant's wife that the appellant had just shot the deceased. Based on the information known to Officer Roberts at the time, there was sufficient probable cause to arrest the appellant. *Loving v. State,* 559 S.W.2d 363, 367 (Tex.Cr.App.1977). Although it is true that Oklahoma authorities did not individually possess probable cause for the arrest, they had the right, however, to assume the officer requesting the arrest had sufficient probable cause to justify the initial detention of the appellant. *Williams v. State,* 621 S.W.2d 609, 612 (Tex.Cr.App.1981);

---

1. Since no evidence was offered as to laws of Oklahoma concerning warrantless arrests, they are presumed to be the same as the laws of Texas. *Hall v. State,* 619 S.W.2d 156, 158 (Tex. Cr.App.1980); *Almand v. State,* 536 S.W.2d 377, 379 (Tex.Cr.App.1976).

*also see Woodward v. State,* 668 S.W.2d 337 (Tex.Cr.App.1982), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).

■ Turning now to appellant's contention that there was time to obtain a warrant, we find that contention to be without merit. In the instant case, appellant was apprehended in Oklahoma on a public highway after a high speed chase. Article 14.-04 does not require a showing that the offender was in fact about to escape, nor does it require a showing that there was in fact no time to procure a warrant. *Dejarnette v. State,* 732 S.W.2d 346, 349 (Tex.Cr. App.1987). The statute merely requires a showing that there is *satisfactory proof from representations by a credible person* that the felony offender "is about to escape, so that there is no time to procure a warrant." *id.* (emphasis added). The police officers themselves may observe conduct which indicates that the offender is about to escape. *Id.* at 350. In the instant case, the fact that the defendant fled from the Oklahoma authorities at a high rate of speed on a public highway provides satisfactory proof that the appellant was "about to escape." See, e.g., *Loving v. State,* 559 S.W.2d 363, 367 (Tex.Cr.App.1977) (warrantless arrest justified when defendant was apprehended four hours after felony theft, late at night in a moving vehicle on a public road).

■ Finally, appellant argues even if the arrest met the other requirements of Article 14.04, his arrest is invalid because he was not arrested by a "peace officer" of the State of Texas as required under Art. 14.04. As noted earlier, absent proof of the contrary, the laws of another state are presumed to be the same as the laws of Texas. *Hall v. State,* 619 S.W.2d 156, 158 (Tex.Cr.App.1980); *Almand v. State,* 536 S.W.2d 377, 379 (Tex.Cr.App.1976). Art. 2.12, V.A.C.C.P. provides that "sheriffs and their deputies" are peace officers. Absent

a showing to the contrary, it will be presumed that under Oklahoma law, sheriffs are peace officers. *Hill v. State,* 619 S.W.2d 156, 158 (Tex.Cr.App.1980).[2] Therefore, appellant's warrantless arrest by Oklahoma authorities was lawful. The search incident to his lawful arrest was authorized and the evidence recovered was admissible. *Myre v. State,* 545 S.W.2d 820, 826 (Tex.Cr.App.1977). Appellant's third point of error is overruled.

■ In his fourth point of error, appellant argues that the trial court erred when it denied appellant's motion to strike the testimony of State's witness Michael Noland concerning his in-court identification of the appellant, or in the alternative to grant the appellant's motion for a mistrial. Appellant maintains that the State failed to comply with his motion for discovery which required production of any photographs used by the State as a means of identification of the appellant.[3] Appellant argues that the State's nondisclosure of the use of the pretrial photographic lineup denied him due process since he was unable to contest whether or not the pretrial identification procedure was impermissibly suggestive. The State argues that the appellant has failed to preserve the alleged error. Alternatively, the State argues that the nondisclosure was harmless.

At trial, Mike Noland testified that at approximately 1:30 p.m. on the day of the homicide, he was working in his appliance repair shop when he heard a noise louder than a firecracker. He looked out and observed a car coming toward him from the Spicer residence. Noland identified the appellant as the driver of the car. On cross-examination by appellant's attorney, Noland testified that he was shown a photo lineup that included a photograph of the appellant. Appellant's attorney asked a number of questions concerning the photo array and the basis upon which he made his identification. Noland testified that there

---

2. To hold otherwise would ignore over 900 years of common law tradition in which sheriffs have served as conservators of the peace. *See generally* F. Pollock & F. Maitland, *The History of English Law* (1895).

3. The State erroneously contends that the appellant failed to obtain a ruling on his discovery motion. A review of the record reveals that the motion was granted.

were eight photos in the lineup. He further testified that the appellant passed within fifteen feet of him, travelling at about thirty m.p.h. Noland stated he had an unrestricted view of the driver. He was shown the lineup approximately a week before the trial. No objection was made by the appellant at this time concerning the witness's identification of the appellant or on the basis of the State's nondisclosure of the lineup.

After the witness was excused and out of the presence of the jury, appellant moved to strike Noland's testimony on the grounds that the State had failed to provide any photographs used for identification purposes to defense counsel as requested in their discovery motion. In the alternative, appellant requested a mistrial.

Initially, the State contends that the appellant failed to preserve the alleged error. Arguably, appellant may have waived any error when he failed to object to the witness's in-court identification of the appellant after eliciting testimony concerning the photo lineup on cross-examination. See *Duff–Smith v. State*, 685 S.W.2d 26, 33 (Tex.Cr.App.1985), *cert. denied*, 474 U.S. 865, 106 S.Ct. 186, 88 L.Ed.2d 154 (1985). However, it is readily apparent from the appellant's cross-examination of Noland that he was attempting to determine exactly to what extent the discovery order had been violated before lodging his objection. Therefore, we hold that appellant's objection was timely.

■■■■ At the outset, it should be made clear that the State has a continuing burden of disclosure once a motion for discovery has been granted. *Granviel v. State*, 552 S.W.2d 107, 119 (Tex.Cr.App. 1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977). The standard to be applied in cases of suppression or nondisclosure of evidence by the State is whether the testimony may have had an effect on the outcome of the trial. *Ransonette v. State*, 550 S.W.2d 36, 39 (Tex.Cr. App.1977). The key elements that must be shown are (1) suppression of evidence by the prosecution after a request by the defense; (2) the evidence's favorable charac-

ter for the defense; and (3) the materiality of the evidence. *Butler v. State*, 736 S.W.2d 668, 670 (Tex.Cr.App.1987); *Ransonette*, 550 S.W.2d at 39. Appellant admittedly satisfies the first prong. However, the appellant fails to meet the other two prongs of the test.

■■■■ There is no evidence before this Court that indicates that disclosure of the photo lineup would have been favorable to the appellant. If appellant sought to challenge pretrial identification procedures, he should have requested a Wade/Gilbert hearing. *Martinez v. State*, 437 S.W.2d 842, 848 (Tex.Cr.App.1969). When pretrial identification procedures are challenged, the trial court should hold a hearing outside the presence of the jury upon motion of the defense counsel. *Id.* Absent a request, the trial court is under no obligation to conduct such a hearing. *Perry v. State*, 703 S.W.2d 668, 672 (Tex.Cr.App.1986); *Martinez v. State*, 507 S.W.2d 223, 226 (Tex.Cr.App.1974), *cert. denied*, 419 U.S. 969, 95 S.Ct. 234, 42 L.Ed.2d 186 (1974). A conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Webb v. State*, 760 S.W.2d 263, 269 (Tex.Cr.App. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1988); *Coleman v. State*, 505 S.W.2d 878, 880 (Tex.Cr.App. 1974). Because of the appellant's failure to request such a hearing, nothing is presented for review. *Phillips v. State*, 488 S.W.2d 97, 99 (Tex.Cr.App.1972). We cannot find that the undisclosed information would have been favorable to the appellant.

■■■■ Neither can it be said that the information was material in the constitutional sense. Appellant suggests that he "might" have been able to show that the lineup was tainted, creating the possibility of irreparable misidentification. The mere possibility that an item of undisclosed information might have helped the appellant

or might have affected the outcome of the trial does not establish "materiality" in the constitutional sense. *Butler v. State,* 736 S.W.2d 668, 671 (Tex.Cr.App.1987). The testimony of Noland on the number of photographs used at the lineup and his opportunity to observe the appellant the day that Drum was slain does not create a reasonable doubt as to the appellant's guilt.

The failure to effectuate discovery will not result in reversible error unless it can be shown that the evidence withheld would have affected the outcome of the trial in the defendant's favor. *Butler v. State,* 736 S.W.2d at 672; *Quinones v. State,* 592 S.W.2d 933, 941 (Tex.Cr.App. 1980). Since it cannot be shown that the information at issue would have materially affected a determination of the appellant's guilt or punishment, the failure to disclose such evidence was not so prejudicial as to warrant reversal on the basis of a denial of due process. *Butler,* 736 S.W.2d at 672. Appellant's fourth point of error is overruled.

In his fifth point of error, appellant argues that the trial court erred in allowing the introduction, during the guilt/innocence phase, of evidence concerning extraneous offenses to show motive. Appellant contends that the evidence did not tend to raise an inference in favor of the existence of motive on part of the accused to commit the alleged offense as required. *Porter v. State,* 623 S.W.2d 374, 386 (Tex.Cr.App.1981), *cert. denied,* 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982). Appellant argues that the only purpose for the introduction of the extraneous offenses was to prejudice the jury against him.[4]

The record reflects that Robert Goetzinger, an assistant district attorney from Beaver County, Oklahoma, testified that he prosecuted the appellant for felony offenses of unlawful delivery of marihuana and unlawful possession of marihuana with the intent to distribute. Appellant was convicted and assessed two five-year suspended sentences. A copy of the conditions of probation was introduced into evidence. These conditions included among other things that the appellant could not violate the law; he could not leave the state of Oklahoma; and that he could not own or have in his possession or control any weapon or firearm for any purpose.

Two months prior to the slaying, Goetzinger had occasion to prosecute the appellant again. Appellant had been arrested on misdemeanor assault charges. Appellant pled guilty to those charges. Goetzinger testified that he told the appellant that any future violations of the conditions of his probation would result in the revocation of his probation.

This Court has repeatedly stressed that an accused shall not be tried for some collateral crime or for being a criminal generally. *Porter,* 623 S.W.2d at 385. One of the exceptions to that general rule is that evidence showing a motive is admissible even though it shows the commission of an extraneous offense. *Id.; Barefoot v. State,* 596 S.W.2d 875, 887 (Tex.Cr.App. 1980) *cert. denied,* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981); *Hughes v. State,* 563 S.W.2d 581 (Tex.Cr.App.1978), *cert denied,* 440 U.S. 950, 99 S.Ct. 1432, 59 L.Ed.2d 640 (1979). Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex.R. Crim.Evid. 403.

Appellant contends, as did the defendant in *Porter, supra,* that is was unnecessary to establish motive in order to sustain a conviction for murder. In response to this contention, we held in *Porter* that:

[t]his ignores that evidence of motive is one kind of evidence aiding in the establishing proof of an alleged offense. *Rodriguez v. State,* 486 S.W.2d 355 (Tex.Cr.

---

4. Appellant argues that *Rodriguez v. State,* 486 S.W.2d 355 (Tex.Cr.App.1972) prohibits the State from putting on evidence of motive since intent can be inferred by appellant's use of a shotgun to kill the deceased. The proposition that intent can be presumed by use of a deadly weapon was overruled by this Court in *Harrell v. State,* 659 S.W.2d 825 (Tex.Cr.App.1983).

App.1972). Thus the prosecution may always offer evidence to show motive for the commission of an offense because it is relevant as a circumstance to prove the commission of the offense.

*Porter,* 623 S.W.2d at 385–386.

The evidence in the instant case reveals that two months prior to commission of the offense of capital murder the appellant had been warned that any future violations of the conditions of his probation would result in its revocation and his serving of time in the penitentiary. At the time of the shooting, appellant had left Oklahoma; was in possession of firearms; and he was involved in a domestic dispute that resulted in the police being called, all violations of the conditions of his probation. The evidence tends to raise the inference that the appellant's motive in the shooting was to avoid apprehension. See *Porter v. State,* 623 S.W.2d 374, 386 (Tex.Cr.App.1981), *cert. denied,* 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982) (commission of armed robbery eleven days prior to shooting admissible to show motive was to avoid apprehension). The trial court did not err in admitting the evidence for the purpose of showing motive. Appellant's fifth point of error is overruled.

In his sixth point of error, appellant asserts that the trial court erred in admitting a cassette tape of a radio conversation between the deceased officer and a radio dispatcher and a transcription of the tape. The tape was a recording of police radio transmissions on the day the deceased was shot.

Sheriff Joe Hataway, of Ochiltree County, testified that the Sheriff's office recorded radio transmissions between officers in the field and dispatchers. The recordings were made by a voice-activated tape-recording machine which recorded each conversation as it came across the radio. The recordings were made contemporaneously with the transmissions. The tape copies were maintained for six months after the initial recording. He testified that the people making the transmissions had personal knowledge of the subject of the transmissions. Hataway stated that he was the custodian of the Sheriff's office records. He further testified that the cassette tape admitted into evidence was made in the ordinary course of business of the Sheriff's Department and was the original recording made on March 28, 1987, the day of the homicide.

A transcription of the tape was also admitted into evidence. Sheriff Hataway testified that he had listened to the cassette tape and the transcription was accurate. The portion of the tape and transcript about which appellant complains is as follows:

Peggy: 1 adam.

302, I have got Perryton PD on the phone and subject that ya'll are looking for just called his wife and is threatening her and she said she believed he is still in town somewhere.

Melvin: Unreadable.

Delvin: 302 did you have traffic?

Melvin: Were you clear on the S.O.'s traffic?

Delvin: Ten-four. Boy the snow and fog's hit out here, has it there?

Melvin: Yeah, I've ran into two of them up here, there'll shower through there, then it'll clear back out again. I ran through somewhere where visibility was probably 100 feet.

Delvin: Ten four.

Delvin: 302 do you think he'd have anywhere in Booker to go?

Melvin: Ten nine 303.

Delvin: If he's not here, you reckon he's in Booker?

Peggy: 302 one adam please.

Peggy: Okay, I have Gail Rogers on the phone and he said he just received a call that the subject is in town and he has just threatened his wife and is trying to force her to come out to the residence. They have already left are suppose to be on his way out there to get her check.

Melvin: Unreadable

Peggy: 302.

Melvin: Do we know what address they left from:

Peggy: As far as I know they're at his wife's residence. He has had just re-

ceived this phone call saying that he did have his wife with him and they were in route out there to pick up her check.

Melvin: His wife's residence is in Oklahoma, I think ...

Peggy: Ten four he said they had just left the residence and was on his way out.

Melvin: Ten four, did he talk to the subject we're looking for or just the one Gayle talked to?

Peggy: Ten four.

James: 220 302.

Melvin: There was no sign of that either one of them had made it to the line and headed west.

James: 302.

Melvin: 302 go ahead.

James: 302 I've got him in uh, I'm watching him right now, he's over here on Fordham.

Melvin: Ten four, is he traveling?

James: Ten seventy-four, he's at his brother-in-law's.

Melvin: Ten four, is that in the nine hundred block of Fordham"

James: That'll be correction, that's Grinnell. Be the one hundred block of north Grinnell.

Melvin: Ten four, 303 were you clear.

Delvin: Ten four. Is he at another residence, or is he still there do you reckon:

Melvin: Ten nine.

Melvin: 220.

James: Go ahead.

Melvin: Is that Dodge with the glasses all out over there:

James: Ten four, that's the Dodge.

Melvin: And the Ford's there also, right?

James: Ten four.

Melvin: OK, we'll be headed that way, just stay there a while.

James: He's moving right now.

Melvin: Ok, what block's he in?

James: About the zero hundred block headed just right at Brillhart.

Melvin: Ten four, 303 what's your twenty?

Delvin: About a mile south.

Melvin: Ten four.

James: Just a couple of blocks behind you, Melvin.

Melvin: Be out in the rear of 302 ...

Appellant concedes that such records are admissible under the business records exception to the hearsay rule. *Porter v. State*, 623 S.W.2d at 384. Appellant urges this Court to reconsider its ruling in *Porter*, arguing that the decision is unsound and should be overruled. He further argues that a portion of the tape and transcription pertaining to Gayle Rogers contained double hearsay and should have been excluded.

We cannot agree with appellant's contentions. The business record exception to the hearsay rule formerly found in the Business Records Act, former art. 3737e, V.A. C.S., is now contained in Tex.R.Crim.Evid. 803(6). It provides that:

> (6) **Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that compiles with Rule 901(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

Tex.R.Cr.Evid. 803(6). Sheriff Hataway testified that the recording was made in the regular course of business by the Sheriff's department; that it was made by a person with knowledge; and the recording was made contemporaneously with the transmission. He further testified that he was the custodian of the cassette tape. He had compared the tape and transcript and found the transcript to be accurate. The

tape and transcription were properly admissible as a business record as an exception to the hearsay rule.

Additionally, appellant argues that the portion of the tape and transcription referring to Gayle Rogers was double hearsay. We find this contention to be meritless. It is well established that an extra-judicial statement or writing offered for the purpose of showing what was said rather than for the truth of the matter stated therein does not constitute hearsay. *Porter*, 623 S.W.2d at 385.

The communications between the police officers and the dispatcher were not offered for the truth of the matter asserted. Such a transmission is admissible to show (1) the circumstances surrounding and leading to the shooting; (2) that the officer was acting in the lawful discharge of his duty; and (3) as res gestae statements. *Id.* The trial court did not err in admitting the cassette tape and the transcription. Appellant's sixth point of error is overruled.

In his seventh point of error, appellant complains of the improper exclusion of a transcription of telephone conversations between appellant and his wife made while he was incarcerated in the Beaver County, Oklahoma jail. Appellant argues that the exhibit should have been admitted as a business record.

At trial, during guilt/innocence phase, the appellant attempted to introduce a transcript of a series of telephone conversations between appellant and various family members and friends, including his wife, while he was incarcerated in the Beaver County Jail. A review of the tape shows that appellant was aware that he was being recorded. The exhibit was initially admitted, but was later withdrawn after both sides had closed the evidence. The exhibit had not been shown to the jury. The trial court stated that he withdrew the exhibit because he had erroneously admitted it as a business record.

The State initially objected to the admission of the transcript on the grounds that no proper predicate had been laid. Later, the State objected because the statements were self-serving. Appellant argues on appeal that the exhibit was relevant to the issues of deliberateness and future violent conduct.

Appellant called Sheriff Cassingham of Beaver County, Oklahoma in an attempt to lay a predicate for the admission of the transcript. Cassingham testified that while appellant was incarcerated in Beaver County, that most of his phone calls were monitored. These calls that were monitored were automatically taped by a recording device. He maintained the original tapes in his office. He testified that the calls were monitored in the ordinary course of business. Cassingham stated the recording was made at the time that the call occurred. Cassingham believed that a copy of all the tapes were sent either to Bruce Roberson, district attorney for Ochiltree County, Texas, or the Sheriff's office there. Cassingham was shown a copy of what appeared to be a transcript of the telephone conversations. He testified that he had not listened to all the tapes but the transcript appeared to be a transcription of those tapes. The exhibit was then admitted.

After both sides had closed, the trial court withdrew the exhibit on the basis that a proper predicate had not been laid for its admission as a business record. Out of the presence of the jury, appellant called the prosecutor, Bruce Roberson, as a witness.

Roberson testified that he gave appellant's counsel what purported to be transcriptions of tape recordings that were made at the Beaver County Jail. He retained a copy of the tape. The transcription was not made by him or his office. He testified that it was given to him by Ken Donahue. He was unable to state whether the transcription was accurate or not.

Ken Donahue was recalled as a witness. He testified that he had received the tape from Sheriff Cassingham. At his direction, a secretary in the Sheriff's office typed the transcript. A copy was given to Bruce Roberson. He testified that the transcription was made in the ordinary course of business. He could not testify as to the accuracy of the transcription. The trial

court ruled that the transcription was not a business record. Appellant again objected to the withdrawal of the exhibit after its initial admission and requested that it be admitted; or in the alternative, that appellant be granted a mistrial.

As noted above, the business records exception to the hearsay rule is found in Tex.R.Crim.Evid. 803(6). Prior to the adoption of the Texas Rules of Criminal Evidence, the business records exception was found in former art. 3737e, V.A.C.S., along with its related authentication procedure (now found in Tex.R.Crim.Evid. 901(b)(10)). *See* TEX.SENATE INT.STUDY F. (Feb. 27–28, 1982). A review of the legislative history indicates that the promulgators intended to retain the basic substance of former art. 3737e in the new Rules. *Id.*

The purpose of the [business records exception] is to dispense with the necessity of proving each and every book entry by the person actually making such entry. *Coulter v. State*, 494 S.W.2d 876, 884 (Tex.Cr. App.1973). The theory underlying [Rule 803(6)] is that there is a certain probability of trustworthiness of records regularly kept by an organization while engaged in its activities and upon which it relies in the ordinary course of its activities. *Id.* "The [rule] permitting the admission of such records should be liberally construed, but not mechanistically applied. Even though the formal requirements may be shown, they are not to be admitted automatically; the indispensable fundamental trustworthiness of the proffered record must be evident." *Id.* at 884. "[E]vidence within the

ambit of a recognized exception to the hearsay rule is not admissible if it does not have the 'indicia of reliability.'" *McCrary v. State*, 604 S.W.2d 113, 115 (Tex.Cr.App. 1980).

 Appellant's contention that the transcript is a business records fails for a variety of reasons.[5] First, it does not appear to be a regularly conducted activity as contemplated by the rules. Cassingham testified that "most of the calls" were recorded, implying the existence of a discretionary policy. This would cast some doubt upon the reliability of the records.

Second, the business records exception requires that the information recorded be supplied by "a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 901(b)(10), *unless the source of information or the method or circumstance of preparation indicate lack of trustworthiness.*" Tex.R.Crim.Evid. 803(6) (emphasis added); *McGowan v. State*, 664 S.W.2d 355, 359 (Tex.Cr.App.1984); *Porter v. State*, 623 S.W.2d at 384.

The information recorded here was supplied by appellant and various family members and friends. The statements were self-serving hearsay. Such statements generally are not admissible unless they

---

**5.** The transcript would also be inadmissible under the public record exception to the hearsay rule. In *Porter v. State*, 578 S.W.2d 742 (Tex.Cr. App.1979) we held:

Clearly, the recordation pursuant to law of official acts, events, or matters relating to the operations of a federal parole office or to particular parolees, about which there can be no reasonable dispute, is done in the performance of the functions of a government officer's official duties. Cf. *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed.2d 645 (1943); *Loper v. Andrews*, 404 S.W.2d 300 (Tex.Sup.1966). But the fact that a district office makes a practice of maintaining in a file any opinion or conclusion regarding a parolee within the office's charge, regardless of its source, does not necessarily put those

statements in the class of records which are kept in the performance of the functions of a government officer's duties. To hold such informal records are included within Article 3731a, supra, would pervert a rule "designed to facilitate admission of records which experience has shown to be quite trustworthy." See *Palmer v. Hoffman, supra*, 318 U.S. at 113, 63 S.Ct. at 480.

*Id.* at 747. Here, the source is the appellant himself. The appellant was aware he was being recorded. To allow him to introduce self-serving statements without fear of cross-examination would undermine the very effectiveness of the rule. Moreover, the fact that the appellant has made the entry, without any duty or obligation to do so, militates against the trustworthiness of the record.

fall within some other exception. *Allridge v. State*, 762 S.W.2d 146, 152 (Tex.Cr.App. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 835, 102 L.Ed.2d 968 (1989). Here, the transcript was offered for the proof of the matter asserted, namely, that appellant suffered blackouts. Clearly, self-serving hearsay statements offered by the appellant as original evidence do not possess the fundamental trustworthiness as contemplated in the business record exception.

■ Assuming arguendo that the tape would be admissible under an hearsay exception, the transcript would still be inadmissible. Although the records may be admissible, the contents of such records are still subject to hearsay objections. *McCrary v. State*, 604 S.W.2d 113, 115 (Tex.Cr.App.1987). The statements are hearsay which do not fall within any hearsay exception. This constitutes hearsay within hearsay and is inadmissible. *Trussell v. State*, 585 S.W.2d 736, 738 (Tex.Cr. App.1979).[6]

■ Finally, appellant contends that the transcript was relevant to the issue of deliberateness and future dangerousness. We find this argument to be without merit. The discretion of the trial court in admitting or excluding evidence under 37.071(a) extends only to the relevance of the evidence and does not alter the rules of evidence insofar as the manner of proof is concerned. *Porter*, 578 S.W.2d at 742. Therefore, we find that the trial court did not err in excluding the transcript. Appellant's seventh point of error is overruled.

In his eighth point of error, appellant challenges the sufficiency of the evidence to support the jury's affirmative answer to special issue number two. Special issue number two asks the jury: "Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Article 37.071(b)(2), V.A.C.C.P.

Appellant argues that the evidence shows the "act was neither planned nor necessarily intended but rather spontaneous." He asserts that appellant's two convictions for possession and delivery of marihuana were not shown to be acts of violence. Further, the two prior convictions for marihuana were admitted during the guilt/innocence phase for the purpose of showing motive at the request of the State. The appellant contends that because of this limitation these offenses were not in evidence for consideration by the jury during the punishment phase. The appellant argues that the evidence is insufficient to warrant the jury's affirmative answer to special issue number two.

■ The relevant standard of review to be applied in the instant case is whether the evidence, when viewed in the light most favorable to the verdict, would lead any rational trier of fact to make the affirmative finding beyond a reasonable doubt. *Burns v. State*, 761 S.W.2d 353, 355–356 (Tex.Cr.App.1988); *Keeton v. State*, 724 S.W.2d 58, 61 (Tex.Cr.App.1987). In answering the special issues in a capital case, the jury may consider all of the evidence adduced at both phases of the trial. *Havard v. State*, No. 69,958, slip op. at 27 (Tex.Cr.App. June 14, 1989). In some instances, the circumstances of the offense alone can sustain an affirmative answer to the second special issue. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Cr.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Santana v. State*, 714 S.W.2d 1, 8 (Tex.Cr.App.1986).

■ The jury is permitted to consider many factors when determining whether the defendant will pose a continuing threat to society. *Keeton*, 724 S.W.2d at 61. These factors include but are not limited to: (1) the circumstances of the capital offense, including the defendant's state of mind and

---

**6.** The instant case is closely analogous to situations dealing with police offense reports. Police offense reports may meet the formal requirements of the business record exception, but should not be automatically admitted. *Coulter v. State*, 494 S.W.2d 876, 884 (Tex.Cr.App.1973).

The fundamental trustworthiness of the record must be evident. *Porter*, 623 S.W.2d at 384. If the report is offered as original evidence for the truth of the matter asserted, then the offered evidence is hearsay within hearsay. *Trussell v. State*, 585 S.W.2d 736, 738 (Tex.Cr.App.1979).

whether he was working alone or with other parties; (2) the calculated nature of the defendant's acts; (3) the forethought and deliberateness of the crime's execution; (4) the existence of a prior criminal record, and the severity of the crimes; (5) the defendant's age and the personal circumstances at the time of the offense; (6) whether the defendant was acting under duress or the domination of another at the time of the commission of the offense; (7) psychiatric evidence; and (8) character evidence. *Havard,* slip op. at 27; *Keeton,* 724 S.W.2d at 61.

 The evidence adduced during guilt/innocence in the instant case reveals that appellant murdered Melvin Drum while appellant was embroiled in a domestic dispute. Testimony was introduced showing that the appellant had argued with his wife in her car at the place of her employment. He exited the car, got a shovel and proceeded to smash the windows while his wife sat in the car. Appellant left when the police were called. He later made threatening phone calls to the business manager of his wife's employer.

Appellant returned to where his wife was working, followed by the deceased. Sherry Vance testified that she saw appellant's wife attempt to stop the appellant. The appellant ignored his wife's entreaties and shot the deceased, killing him. Two hours later, and after a high-speed chase, appellant was apprehended in Oklahoma with three shotguns in his possession.

Oklahoma prosecutor Goetzinger testified that appellant had been convicted of two offenses involving marihuana. He had received a probated sentence. At the time of his arrest for these offenses, he had in his possession an automatic rifle and a sawed-off shotgun.

Goetzinger testified that two months prior to the slaying of Melvin Drum, appellant was convicted of a misdemeanor assault charge. He had assaulted his children's bus driver for running over his dog. He pursued the bus driver at high-speed to the school, attempting to continue beating him. (The bus driver had returned in a car to remove the dog from the road).

During the punishment phase, a detective from the Woodard police department in Oklahoma testified concerning appellant's marihuana arrest. The detective stated no ammunition was found for the automatic rifle that appellant had in his home at the time of the arrest. He testified that at the time of appellant's arrest he had a sawed-off shotgun in his possession.

The bus driver who appellant assaulted also testified. He testified that appellant chased him at speeds up to and over 100 m.p.h. The principal of the school was able to calm the appellant down. Subsequently, charges were filed and appellant was convicted of misdemeanor assault.

Appellant offered no evidence at the punishment phase. During the guilt/innocence phase he introduced medical records concerning alleged blackouts and that he was easily enraged as a result of a motorcycle accident.

Appellant argues that his prior convictions were admitted during the guilt/innocence phase for the limited purpose of showing motive. He contends that under this Court's decision in *Marras v. State,* 741 S.W.2d 395, 408 (Tex.Cr.App.1987) the jury was precluded from considering these past offenses. In Marras, this Court found the evidence insufficient to sustain an affirmative answer to special issue number two. The trial court's charge had limited the admission of the extraneous offense for the purpose of intent only. *Id.* Therefore, the evidence of extraneous offenses and past convictions should have been excluded. *Id.*

The sufficiency of the evidence must be measured by the charge given. *Marras,* 741 S.W.2d at 408. Generally the jury is permitted to consider prior criminal conduct and criminal record in the punishment phase. *Keeton,* 724 S.W.2d at 61. The instant case is distinguishable from *Marras, supra.* There, the trial court instructed the jury not to consider the extraneous offenses for anything other than intent. *Marras,* 741 S.W.2d at 407. Here, the trial court gave a charge which contained the following instruction:

**356**

*You are further instructed that in determining each of the Special Issues you may take into consideration all of the evidence submitted to you in the full trial of the case,* that is, all of the evidence submitted to you in the first part of the trial of this case wherein you were called upon to determine the guilt or innocence of the defendant, and all of the evidence, if any, admitted before you in the second part of the trial wherein you were called upon to determine the answer to the Special Issues hereby submitted to you.

(emphasis added).

No objection was made by the appellant as to this charge. We must presume that the the jury conducted itself as directed by the trial court. *Marras*, 741 S.W.2d at 407. The jury was instructed to consider all evidence admitted at trial in answering the Special Issues. Accordingly, we find that the past convictions and extraneous offenses may properly be used in evaluating the sufficiency of the evidence to support an affirmative finding.

█ The evidence as reflected by appellant's previous criminal conduct and the circumstances surrounding the present offense sufficiently support the jury's finding that there is a probability that the appellant would constitute a continuing danger to society. Appellant' eighth point of error is overruled.

The judgment of the trial court is affirmed.

CLINTON, J., finding the treatment of points four, five, six and seven failing reasonably to explicate governing law, and that the evidence is not sufficient to support an affirmative answer to special issue two, respectfully dissents.

TEAGUE, J., not participating.