

# NUMBER 13-10-00365-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI–EDINBURG

CLARENCE MARTIN,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                                 Appellee.

### On appeal from the 130th District Court
### of Matagorda County, Texas

# MEMORANDUM OPINION

### Before Justices Garza, Vela, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant, Clarence Martin, appeals his conviction for aggravated assault with a deadly weapon, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.02 (West 2005). After a jury trial on guilt-innocence, the trial court assessed punishment at seventy-five years of confinement in the Texas Department of Criminal Justice. By two issues,

appellant argues: (1) the evidence is legally insufficient to sustain his conviction; and (2) the trial court erred by admitting evidence of his "Aryan Brotherhood" gang affiliation during the guilt-innocence phase of trial. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

One night in February 2007, appellant rented a motel room in Bay City, Texas. Overnight, appellant had four or five guests come to the room to "party," the term party being a euphemism for using crack cocaine. As check-out time approached, appellant and three of his guests were the only remaining occupants of the room. Appellant decided he would travel to San Antonio with two of his guests, Michael and Michael's girlfriend. This left one remaining guest, Darryl (the "complainant"), who was asleep or "passed out" on one of the beds in appellant's motel room.

After appellant, Michael, and Michael's girlfriend loaded their possessions into the car, appellant and Michael returned to the motel room. Michael's girlfriend waited in the car. Michael could not wake the complainant. Appellant told Michael, "I got this. I'll get him up," and proceeded to stab the complainant with a knife while the complainant was sleeping.

The complainant testified that he awoke as appellant stabbed him. The complainant testified that appellant said, "I got something for that mother f---er," and then proceeded to cut him many more times without saying anything. Appellant stabbed the complainant behind the neck, on the right side of his cheek, elsewhere on the face, and cut one of his eyes. Appellant cut the complainant's jaw "all the way through," requiring the subsequent removal of all of the complainant's teeth.

2

Due to massive blood loss, the complainant suffered a stroke. As a result of the stabbing, at the time of trial, the complainant had a paralyzed hand, a limited range of motion in one arm, speech and cognitive difficulties, and abnormal right leg function, requiring the complainant to walk with a cane. The complainant was hospitalized for a month as a result of his injuries and spent six months in a nursing home. With physical therapy, the complainant regained the ability to walk.

Michael and the complainant were friends before the stabbing and remained friends afterward. Michael told appellant not to stab the complainant. Michael testified appellant "was slashing" the complainant and that when the appellant pulled the knife out of the complainant, he would not pull it straight out. "He would pull it like he was causing damage." Michael did not think the complainant would survive the stabbing. Sergeant Chris Crummett of the Bay City Police Department was the first policeman to arrive at the motel in response to a 911 call. Crummett testified the complainant's injuries were very, very serious and that he thought the complainant would die.

At the motel, before being rushed away for medical attention, the complainant described the perpetrator to police as a white male, covered in tattoos, who was "five foot, eight plus." The complainant told police at the scene he did not know the perpetrator's name. The complainant readily identified appellant as the perpetrator in a photograph line-up and testified at trial he will never forget appellant's face. The complainant testified he met appellant the night before the stabbing and that he did not learn appellant's name until his mother read it in a newspaper article about the stabbing.

Michael and the complainant both testified there was no apparent motive for appellant to stab the complainant.

Appellant gave police three different versions of what had transpired: (1) that appellant was not at the scene when the complainant was stabbed; (2) other people were in and out of the motel room and could have stabbed the complainant; and (3) Michael stabbed the complainant while appellant stood at the door of the motel room. DNA evidence on appellant's pants matched the complainant's DNA, to an extremely high degree of certainty. Though it was of poor quality, surveillance video from the motel corroborated the witness testimony that appellant and Michael were in the room at the time of the stabbing, with appellant running out of the room before Michael exited the room.

Over appellant's character and timeliness objections at trial, the trial court admitted the State's evidence of gang affiliation offered to show appellant's motive and identity. Appellant argued the evidence was character evidence that would not be admissible until the punishment phase of trial. The gang-affiliation evidence consisted of appellant's statement during booking at the Matagorda County Jail that he was a member of the Aryan Brotherhood and did not want to be jailed with any black people. The evidence also included photographs of tattoos on appellant's stomach and legs that included a large swastika and lightning bolts. A witness for the State testified the lightning bolts were an insignia of Nazi "S.S." culture and briefly described supremacists' tattoos. The complainant was a black man.

4

## II. STANDARD OF REVIEW

When conducting a legal sufficiency review, a court must ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt—not whether it believes the evidence at trial established guilt beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.); *Laster v. State,* 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia,* 443 U.S. 307, 318–319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In doing so, we assess all of the evidence in the light most favorable to the prosecution. *Laster, 275* S.W.3d at 517 (quoting *Jackson,* 443 U.S. at 319). We must presume that the fact finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson,* 443 U.S. at 326.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Green v. State,* 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996); *Horner v. State*, 129 S.W.3d 210, 216 (Tex. App.—Corpus Christi 2004, pet. denied). Where the trial court's evidentiary ruling is within the "zone of reasonable disagreement," there is no abuse of discretion and we will uphold the trial court's ruling. *Santellan v. State,* 939 S.W.2d 155, 169 (Tex. Crim. App. 1997); *Green*, 934 S.W.2d at 102; *Horner*, 129 S.W.3d at 216.

## III. ISSUES AND ANALYSIS

### A. Sufficiency of the Evidence

By his first issue, appellant argues the evidence was legally insufficient to convict him of aggravated assault with a deadly weapon. Appellant emphasizes the evidence

5

allegedly does not show he threatened the complainant and thus there is a reasonable doubt as to whether he intentionally, knowingly, and recklessly caused the complainant bodily injury. Appellant also argues the evidence is legally insufficient to show he used a deadly weapon and points out the knife used to stab the complainant was never found.

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* A person commits the offense of assault if that person intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2005).[1] The offense is an aggravated assault if the person committing the assault uses a deadly weapon during the commission of the assault. *Id.* § 22.02(a)(2). A deadly weapon is defined as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury ." *Id.* § 1.07(a)(17).

---

[1] The indictment in this case charged the mental state in the conjunctive, alleging appellant "intentionally, knowingly, and recklessly" caused bodily injury. The jury charge tracked the assault statute and set forth the mental state in the disjunctive: "intentionally, knowingly, or recklessly." We note appellant has not complained about this on appeal and the distinction does not affect our analysis. *See Zanghetti v. State*, 618 S.W.2d 383, 387–88 (Tex, Crim. App. 1981). Further, on the record in this case, we cannot conclude the evidence is insufficient to support a finding that appellant acted intentionally, knowingly, and recklessly.

A knife is not a deadly weapon per se or by design. *See Thomas v. State,* 821 S.W.2d 616, 619–20 (Tex. Crim. App. 1991). A knife becomes a deadly weapon if its use or intended use renders it capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B); *McCain v. State,* 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). We consider whether there is sufficient evidence to show the actor used the knife or intended to use the knife in such a way that it was "capable of causing death or serious bodily injury." *Alvarez v. State,* 566 S.W.2d 612, 614 (Tex. Crim. App. 1978). Whether a particular knife is a deadly weapon by design, a deadly weapon by usage, or not a deadly weapon at all depends on the evidence of each individual case. *Thomas,* 821 S.W.2d at 620. Factors considered in determining whether a knife is a deadly weapon in its use or intended use include: (1) dimensions of the knife, (2) manner of its use or intended use, (3) nature or existence of inflicted wounds, and (4) testimony of the knife's life-threatening capabilities, if used. *Id.* at 619.

After reviewing the evidence, we conclude a rational jury could have found beyond a reasonable doubt that appellant committed aggravated assault with a deadly weapon. *See Jackson,* 443 U.S. at 326. Even if we assume, without deciding, the State was required to prove a threat, Appellant's complaint the evidence does not show he threatened the complainant is moot in light of the complainant's testimony that appellant said, "I got something for that mother f---er," and then proceeded to stab the complainant multiple more times. Based on the evidence of the severity of the complainant's injuries and how appellant used the knife, there is no doubt the knife in this case was a deadly

7

weapon. *See McCain*, 22 S.W.3d at 497 (finding evidence sufficient to support conclusion butcher knife was deadly weapon). Appellant's first issue is overruled.

## B. Admission of Evidence of Appellant's Gang Affiliation

By his second issue on appeal, appellant argues the trial court erred by admitting evidence he was a member of the Aryan Brotherhood during the guilt-innocence phase of trial. On appeal, appellant argues the evidence was inadmissible under Texas Rules of Evidence 401 (definition of relevant evidence), 403 (exclusion of relevant evidence), 404 (inadmissibility of character evidence), and 405 (methods of proving character). *See* TEX. R. EVID. 401, 403–05. The gang-affiliation evidence consisted of appellant's statement during booking at the Matagorda County Jail that he was a member of the Aryan Brotherhood and that he did not want to be jailed with any black people. The evidence also included photographs of tattoos on appellant's stomach and legs that included a large swastika and lightning bolts.

While evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person in order to show action in conformity therewith, it may be admissible for other purposes such as proof of motive. TEX. R. EVID. 404(b). Though motive is not an element of aggravated assault with a deadly weapon, the prosecution may offer evidence to show motive for the commission of the offense because it is relevant as a circumstance to prove the commission of the offense. *See Crane v. State*, 786 S.W.2d 338, 349–50 (Tex. Crim. App. 1990). Once the opponent of extraneous-acts evidence raises an appropriate character-evidence objection, the proponent of the evidence must satisfy the trial court that the evidence has relevance apart from proving character

8

conformity. *Johnston v. State*, 145 S.W.3d 215, 220 (Tex. Crim. App. 2004); *Lopez v. State*, 200 S.W.3d 246, 252 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd.) (citing *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (op. on reh'g)).

After the State offered appellant's statement and photographs of his tattoos, showing Aryan Brotherhood affiliation, appellant objected on the grounds that they were inadmissible at the guilt-innocence phase of trial because they constituted character evidence. *See* TEX. R. EVID. 404, 405. The State countered contending the evidence was relevant to show appellant's motive for stabbing the complainant and to clarify the identity of the perpetrator. This evidence is the only evidence of motive in the record. Because the evidence raises an inference that appellant's motive in stabbing the complainant was to harm him because of his race, the trial court did not err in admitting the evidence for the purpose of showing motive. *See Vasquez v. State*, 67 S.W.3d 229, 239–40 (Tex. Crim. App. 2002) (allowing "Mexican Mafia" evidence to show motive); *McCallum v. State*, 311 S.W.3d 9, 15–16 (Tex. App.—San Antonio 2010, pet. ref'd.) (holding probative value of "Aryan Brotherhood" affiliation evidence to show motive for seemingly unprovoked attack outweighed danger of unfair prejudice); *Garcia v. State*, No. 13-97-458-CR, 1998 WL 34202279   at *6 (Tex. App.—Corpus Christi Aug. 13, 1998, no pet.) (mem. op.) (not designated for publication) (discussing "Tri-City Bombers" gang-affiliation evidence).

Further, appellant gave multiple versions of what happened that day, one in which he denied having been at the hotel when the complainant was stabbed. During the trial, appellant's counsel made repeated attempts to discredit the complainant's memory

9

regarding appellant's identity. We conclude the evidence was also admissible to prove identity. TEX. R. EVID. 404 (b); *see Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996) (discussing admissibility of extraneous offenses to show identity); *Arias v. State*, No. 04-09-00571-CR, 2010 WL 5541118 at *5–6 (Tex. App.—San Antonio Dec. 29, 2010, pet. ref'd.) (mem. op.) (not designated for publication) (holding photographs of gang-related tattoos admissible in showing identity).

We do not reach appellant's complaints under Texas Rules of Evidence 401 and 403 because these complaints were not made in the trial court and thus have not been preserved for review. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1); *Johnston*, 145 S.W.3d 220 n.13 (holding a rule 404(b) objection does not preserve error for a rule 403 complaint); *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (same); *Montgomery*, 810 S.W.2d at 388 (same). Appellant's second issue is overruled.

## IV. CONCLUSION

We affirm the trial court's judgment.

_____
Gregory T. Perkes
Justice

Do not publish. Tex. R. App. P. 47.2(b).

Delivered and filed the
21st day of July 2011.