Affirmed and Memorandum Opinion filed July 26, 2007








Affirmed and Memorandum Opinion filed July 26, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00538-CR

____________

 

ROBERTO FRANCISCO RAMIREZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 179th
District Court

Harris County, Texas

Trial Court Cause No. 1070540

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Roberto Francisco Ramirez, appeals his
conviction of capital murder and sentence of life imprisonment.  In his first
two points of error, appellant challenges the legal and factual sufficiency of
the evidence.  In his third point of error, appellant argues that the trial
court erred when it refused to allow a police report into evidence.  We affirm.

I.  Background








On October 2, 2003, the complainant, Damian Delacruz, and
his sister, Antelma Delacruz, drove into Houston where the complainant was to
catch a bus to Mexico.  Instead of going to Mexico, the complainant cashed in
his bus ticket for a refund and went to a nearby area where locals gathered to
drink and visit.  The complainant was found beaten to death near that area the
following morning, October 3, 2003. 

Armando Cantu, who frequented the area, testified that the
complainant arrived at the gathering area sometime on the afternoon of October
2nd.  Cantu testified he heard appellant talking about the Anew guy@ and appellant
said Asomething about
robbery.@  He said
appellant told him that they Astarted to [rob him] but they didn=t go through with
it.@  Cantu then
clarified that appellant was probably referring to Afuture plans@ of robbing the
complainant and not something they had already tried.  Cantu then walked away
from appellant and began talking to someone else.  Cantu testified that he did
not see where appellant was during this time.  A short time later, Cantu,
appellant, and appellant=s wife drove to a nearby store so that
Cantu could cash a check.  Cantu stated that appellant was Afalling down drunk@ when he got in
the car.  Appellant and his wife were arguing during the drive back to the
gathering area, and Cantu testified that appellant told his wife Ato shut up or else
he [was going] to do her like he done him.@  Appellant did
not specify whom he was referring to when he said Ahim.@  Because of the
argument, Cantu got out of the car before they had returned and walked to a bar
located across the street from the gathering area.  Cantu did not see appellant
again until trial.  After about two hours at the bar, Cantu walked outside
behind the bar to relieve himself.  It was then that he noticed a pair of ankles
on the ground in some nearby trees.  Cantu could not see the rest of the body
from his location. 








Jose AChico@ Martinez, another
regular at the gathering area, testified that the complainant was already there
when he arrived on October 2nd.  At some point in time, Chico observed the
complainant walk away from the group, with appellant and Chico=s half-brother,
Manuel Reyes, following behind.  Chico eventually lost sight of the three. 
Chico testified that Reyes returned after approximately thirty minutes, but he
never saw appellant or the complainant return.  On cross-examination, Chico
testified that when Reyes returned, he said A[t]hat the other
hadn=t resisted so
much.@  Chico further
testified that his half-brother was Aa little nervous@ when he learned
that the complainant had died, and that Reyes told him Athat he didn=t want to be
involved in the police.@  He also testified that appellant
appeared to be drunk on the day of the incident.

Alexander Reyna was also at the gathering area at the same
time as the complainant.  When Reyna arrived, appellant was Aquite intoxicated,@ as evidenced by
the fact he was wobbling from side to side and Awas almost falling
off the chair that he was sitting on.@  Reyna testified
that he observed Manuel Reyes forcibly take the complainant away from the
group.  Reyna stated that he did not see appellant go with them, although he
later clarified on cross-examination that he didn=t know whether
appellant went with them.  Reyna testified that he left the area approximately
thirty minutes after he observed Reyes take away the complainant, and that he
did not see Reyes or the complainant return before he left.

Arellano Hernandez, another local, was also with the group
at the same time as the complainant.  At some point, Hernandez left and went
home to take a nap.  He returned to the gathering area that evening and
observed Manuel Reyes throw a piece of lumber into a trash dumpster.  He
testified that he did not see the complainant when he returned. 

Detective Abbondandolo (ADetective Abby@) was dispatched
to the crime scene on the morning of October 3, 2003.  Detective Abby found the
complainant behind a convenience store near the gathering area, beaten to
death, face down, and nude from the waist down.  Near the complainant=s body, the
detective recovered what he believed to be the complainant=s clothes and
wallet, which had no money inside.  Detective Abby testified that the fact that
the complainant=s wallet was pulled out and had no money
in it indicated robbery, and that the complainant=s pants may have
been removed in a search for money and other valuables.








Arelia Granados, appellant=s next-door
neighbor, testified that she saw Detective Selvera knocking on the door of
appellant=s house on October 6, 2003.  After several minutes of
knocking on both the front and back doors of the house and receiving no
response, Detective Selvera went to Granados= house and asked
about appellant.  Following the detective=s departure,
Granados saw appellant come out of the back door of his house and place a pair
of boots under some bricks below the back of the house. 

Detective Selvera was assigned to investigate the death of
the complainant.  After developing appellant as a suspect, Detective Selvera
attempted to contact appellant at his home on October 6, 2003.  After receiving
no response, Detective Selvera went next door and visited with Arelia
Granados.  Detective Selvera talked with Granados again the following day, and
based on that conversation, Detective Selvera requested and received consent to
search appellant=s home from appellant=s wife.  Upon
searching appellant=s home, Detective Selvera found a pair of
steel-toed boots behind some bricks underneath the back of the house. 
Detective Selvera was unable to locate appellant at that time.  








Eventually, Detective Selvera learned that appellant was
being held by federal marshals in Del Rio, Texas.  Apparently, appellant had
been arrested while trying to enter Mexico from the United States.  Detective
Selvera and Detective Leroy Benavides went to Del Rio to question appellant. 
During the course of this questioning, appellant admitted to having fought with
the complainant on October 2, 2003 near the location where the complainant=s body was found. 
Appellant stated that he fought the complainant Aover some beers.@  Appellant also
stated that he was wearing boots the day of the fight and that he hid the boots
because A[h]e got scared
that they were saying that I beat him.@  Appellant later
said that he hid the boots Aso they wouldn=t take them from
me because they were expensive.@  Appellant said that he was fighting
mostly with his hands and that the complainant was also throwing punches at
him.  He initially stated he did not remember kicking the complainant, but
later admitted to kicking the complainant in Athe balls@ and Ain the shins.@  Upon finding out
that the complainant had died, appellant left Houston and tried to go to
Mexico, he explained: A[s]ince I had fought with him, well, I got
scared.@  Appellant stated
that he was alone when he fought the complainant, and that when he left, the
complainant was beaten, but alive and sitting up cursing at him.  Appellant
denied robbing the complainant.

Detective Selvera testified that the boots he recovered
from appellant=s house tested negative for DNA.  He also testified
that near the area where the complainant was found, there were a number of
items, such as Adebris, cinder blocks, rocks, [and] sticks@ that could have
been used as deadly weapons.  On cross-examination, Detective Selvera testified
that while interviewing Jose AChico@ Martinez during
his investigation, Chico stated that his half-brother, Manuel Reyes, was Aextremely nervous@ when he saw the
police the day after the incident.  

Dr. Sarah Chauvin, a medical examiner at the Harris County
Medical Examiner=s Office, reviewed the autopsy performed
on the complainant.  Dr. Chauvin testified that the external examination of the
complainant=s body revealed multiple abrasions and contusions,
including one large contusion on the back of his head and a laceration
extending from that contusion.  There was also a contusion on the complainant=s forehead, a
scrape on his right cheek and on his nose, three linear contusions on his left
cheek, large areas of bruising on his neck and jaw, and a bruise over his left
eyelid.  Dr. Chauvin testified that there was bruising on the neck and jaw
indicating blunt trauma which possibly could have been caused by a shoe or
boot. 








An internal examination of the complainant=s body showed that
the complainant suffered fractured ribs on both sides of his body, which Dr.
Chauvin testified, must have been caused by Aa pretty severe
force.@  The entire back
area of the complainant=s head was discolored and bruised Abasically with a
few areas that are spared or white where the bruising isn=t.@  The internal
examination also reflected deep bruising where the laceration was located on
the head.  There was severe bleeding underneath the backside of the complainant=s skull indicating
extensive force to the head.  Dr. Chauvin testified that there were also
several fractures of the skull itself, which were fatal injuries.  She
explained that it would take Asevere force,@ generally from
multiple strikes, to cause the complainant=s injuries.  Dr.
Chauvin testified that the injuries could have been caused by a blunt instrument,
or by kicking or stomping with a shoe or boot.  She stated that she did not
believe that a fist alone could have caused the injuries that the complainant
sustained to his skull, but that hands banging the head against something firm,
such as cement, could have caused such injuries.  On cross-examination, Dr.
Chauvin testified that she could not determine whether the less severe injuries
on the complainant=s body were caused at or near the same
time as the more severe injuries.  Thus, Dr. Chauvin admitted, there would be
no way of knowing if the less severe injuries were caused a few hours before
the fatal injuries. 

II.  Analysis

A.      Sufficiency
of the Evidence

In his first and second points of error, appellant contends
that the evidence is legally and factually insufficient to establish that he
committed capital murder.   A person commits the offense of capital murder if
he intentionally causes the death of an individual in the course of committing
or attempting to commit a robbery.  See Tex. Pen. Code '' 19.02(b)(1),
19.03(a)(2).  The substance of appellant=s argument is that
the evidence does not sufficiently establish his identity as the perpetrator.








When evaluating the legal sufficiency of the evidence, we
view the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.
307, 319 (1979); King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000).  The standard of review is the same for direct and circumstantial
evidence cases.  Burden v. State, 55 S.W.3d 608, 613 (Tex. Crim. App.
2001); Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999). 
The fact-finder is the exclusive judge of the witnesses= credibility and
of their testimony=s weight, and it is within the fact-finder=s exclusive
province to resolve any evidentiary conflicts.  Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000).  AIn reviewing the
sufficiency of the evidence, we should look at >events occurring
before, during and after the commission of the offense and may rely on actions
of the defendant which show an understanding and common design to do the
prohibited act.=@  Hooper v.
State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting Cordova v. State,
698 S.W.2d 107, 111 (Tex. Crim. App. 1985)).  Circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor, and
circumstantial evidence alone can be sufficient to establish guilt.  Id. 


After reviewing the evidence in the light most favorable to
the verdict, we find that a rational trier of fact could have found that
appellant committed capital murder.  The State offered two witnesses who were
present at the scene on the day of the incident.  Armando Cantu testified he
heard appellant talking about the Anew guy@ and appellant
said Asomething about
robbery.@  Cantu also
testified that appellant told his wife Ato shut up or else
he [was going] to do her like he done him.@  Jose AChico@ Martinez observed
the complainant walk away from the gathering area and appellant and Manuel
Reyes follow behind.  Chico said that Reyes returned but that he never saw
appellant or the complainant return.  While neither witness testified to
actually seeing the killing, both witnesses offered facts from which a jury
could reasonably infer that appellant robbed and killed the complainant, and
the law is clear that circumstantial evidence alone can be sufficient to
establish guilt.  Id. 








In addition to the scene witnesses, the State offered other
evidence to prove appellant=s identity as the perpetrator.  Arelia
Granados, appellant=s next door neighbor, testified that a few
days after the complainant=s death, she saw Detective Selvera knock
on appellant=s front and back doors for several minutes with no
response.  After the detective left the area, Granados watched appellant come
out of the back door of his house and hide his boots behind some bricks below
the back of his house.  After speaking with Granados the following day,
Detective Selvera obtained consent to search appellant=s home and found a
pair of steel-toed boots behind some bricks under the back of the house.  

The transcript of Detective Selvera=s questioning of
appellant was also read into evidence.  During this questioning, appellant
admitted to fleeing the United States for Mexico after learning the complainant
died, saying: A[s]ince I had fought with him, well, I got scared.@  Appellant also
admitted to hiding his boots because he Agot scared that
they were saying that I beat him.@  Also during this
line of questioning, appellant stated that he had fought the complainant on
October 2, 2003 near the area where the complainant=s body was found. 
Appellant said that he mostly fought with his hands, but later admitted to
kicking the complainant as well.  Appellant denied robbing the complainant and
said that when he left the complainant, he was alive and cursing.  We note that
it is the jury=s sole province whether to believe appellant that he
only Afought@ the complainant,
or whether to infer, after considering appellant=s admission of
violence toward the complainant along with all of the other evidence, that
appellant actually killed and robbed the complainant.  Wesbrook, 29
S.W.3d at 111 (AThe jury is the exclusive judge of the
credibility of witnesses and of the weight to be given testimony, and it is
also the exclusive province of the jury to reconcile conflicts in the evidence.@).  Additionally,
Detective Selvera testified that there were a number of items, such as Adebris, cinder
blocks, rocks, [and] sticks@ found near the area of the complainant=s body that could
have been used as deadly weapons.








Dr. Sarah Chauvin testified at length as to the injuries
appellant suffered leading to his death.  She testified that blunt force trauma
from multiple blows was the cause of death and concluded that the fatal
injuries to the skull could have been caused by a blunt instrument, by kicking
or stomping, or by the complainant=s head being
banged into something firm, such as cement.  We hold, after viewing all of the
evidence in support of the verdict and the inferences therefrom, that a
rational trier of fact could have found that appellant intentionally killed the
complainant in the course of committing or attempting to commit robbery,
especially considering appellant=s admission of
fighting the complainant the day of the crime in the area where the complainant=s body was found. 

When reviewing the factual sufficiency of the evidence to
support a conviction, we view all the evidence in a neutral light, favoring
neither party.  Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We
then ask (1) whether the evidence supporting the conviction, although legally
sufficient, is nevertheless so weak that the fact‑finder=s determination is
clearly wrong and manifestly unjust, or (2) whether, considering conflicting
evidence, the jury=s verdict is against the great weight and
preponderance of the evidence.  Watson, 204 S.W.3d at 414‑15, 417;
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse
under the second ground, we must determine, with some objective basis in the
record, that the great weight and preponderance of all the evidence, though
legally sufficient, contradicts the verdict. Watson, 204 S.W.3d at 417. 
In examining a factual sufficiency challenge, we defer to the fact-finder=s determination of
the credibility of the evidence.  Swearingen v. State, 101 S.W.3d 89, 97
(Tex. Crim. App. 2003).








In contrast to the State=s theory of the
case, appellant attempted to show that he only fought with the complainant and
that someone else was responsible for his death.  As support for his contention
that he only fought with the complainant, appellant relies on his statements to
Detective Selvera during questioning.  Appellant stated that he fought the
complainant Aover some beers,@ and that when he
left, the complainant was alive and sitting up cursing at him.  Appellant also
denied robbing the complainant.  The jury considered appellant=s statements along
with all the other evidence offered at trial, and it was within their sole
discretion to believe whether appellant had merely Afought@ with the
complaint, or whether he intentionally killed and robbed the complainant.  See
Swearingen, 101 S.W.3d at 97; Wesbrook, 29 S.W.3d at 111.  On
appeal, appellant suggests that he was too intoxicated to have even fought the
complainant; however, he fails to reconcile this assertion with his admission
of having fought the complainant. 

Appellant argues that the evidence indicates that Manuel
Reyes alone, not appellant, was responsible for the death of the complainant.[1] 
Appellant points to the following pieces of evidence in support: (1) Alexander
Reyna=s testimony that
he saw Reyes forcibly take the complainant away from the group; (2) Arellano
Hernandez=s testimony that he saw Reyes throw a piece of lumber
into the trash combined with Dr. Chauvin=s testimony that
such an instrument could have caused the complainant=s fatal injuries;
(3) Chico=s testimony that his half-brother, Reyes, told him Athat the other
hadn=t resisted so much@ after Reyes had
followed the complainant with appellant; and (4) Chico=s testimony that
Reyes was Aa little nervous@ when he learned
that the complainant had died, and that he told him Ahe didn=t want to be
involved in the police.@  








With regard to Reyna=s testimony, he
later admitted on cross-examination that he did not know whether appellant went
with Reyes and the complainant.  As for Chico=s testimony
regarding Reyes= statement and demeanor following the
incident, a jury could make conflicting inferences based on those facts, some
implicating appellant (i.e., Reyes watched or assisted appellant), and some
absolving him (i.e., Reyes, without the assistance of appellant, robbed and
killed the complainant).  The jury also could have inferred facts implicating
Reyes based on Hernandez=s testimony.  However, the jury considered
that evidence along with all of the other evidence presented at trial,
including the evidence regarding appellant=s actions on the
day of and the days following the incident.  We find that the evidence
implicating Reyes as the sole perpetrator does not greatly outweigh the
evidence supporting the jury=s determinationCthat appellant
participated in the robbery and murder of the complainant. 

Appellant further argues that even if most of the State=s evidence is
considered to be true, it is consistent with his assertion that he fought the
complainant and that someone later robbed and killed the complainant.  For
instance, his statement to his wife Ato shut up or else
he [was going] to do her like he done him,@ could be
construed as a threat to beat her, as he had beaten the complainant.  Appellant
contends that Chico=s testimony that appellant and Reyes
walked off with the complainant[2]
and Alexander Reyna=s testimony that Reyes forcibly led the
complainant away are not inconsistent with his contentions, in that appellant,
Reyes, and the complainant could have left together at one point Aon a beer run,@ and Reyes could
have led the complainant away at a later point in time.  Appellant also posits
that his admission that he hid his boots and then fled to Mexico after learning
of the complainant=s death is consistent with his argument in
that he was simply afraid he would be wrongfully blamed for the complainant=s death,
considering his fight with the complainant on the same day as his death. 
Finally, appellant notes that Dr. Chauvin testified that the less severe
injuries to the complainant, such as those on the front part of his head and
face, could have been caused at a different time (i.e., a few hours before) the
more severe injuries; the implication being that appellant could have fought
with the complainant and caused him minor injuries, and then later, Manuel
Reyes (or someone else) could have caused the fatal injuries in the course of
robbing the complainant.  








In sum, appellant offers many plausible inferences from the
evidence, all leading to the suggestion that he only fought the complainant. 
Also plausible is the jury=s apparent inference from the evidence
that appellant did not, in fact, simply Afight@ the complainant;
rather, he intentionally killed and robbed the complainant.  Our role is not to
substitute our judgment for the fact-finder and determine which inference is
more plausible.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000) (AAlthough our
analysis considers all evidence presented at trial, we may not re‑weigh
the evidence and substitute our judgment for that of the jury.@).  Instead, our
duty is to determine whether the evidence supporting the conviction (and
inferences therefrom) is so weak that the fact‑finder=s determination is
clearly wrong and manifestly unjust or whether the evidence supporting the jury=s determination
(and inferences therefrom) is against the great weight and preponderance of the
evidence.  Watson, 204 S.W.3d at 414‑15, 417; Johnson v. State,
23 S.W.3d at 11.  We find that the evidence supporting appellant=s conviction is
not so weak that the jury=s determination was clearly wrong or
manifestly unjust, especially considering appellant=s admission of
fighting the complainant the day of the crime in the area where the complainant=s body was found. 
And we find, after reviewing all of the evidence presented and considering all
inferences flowing from that evidence, that the evidence supporting the
conviction is not against the great weight and preponderance of the evidence. 
Consequently, we find the evidence to be legally and factually sufficient to
support appellant=s conviction for capital murder.  We
overrule points of error one and two.

B.      Exclusion
of the Evidence

In his final point of error, appellant argues that the
trial court erred by refusing to admit a police report into evidence.  The
trial court=s decision to exclude testimony is reviewed for abuse
of discretion.  Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 906
(Tex. 2000).  The abuse of discretion standard requires an appellate court to
uphold a trial court=s admissibility decision when that
decision is within the zone of reasonable disagreement. Robbins v. State,
88 S.W.3d 256, 260 (Tex. Crim. App. 2002).  








During cross-examination of Detective Selvera, appellant
attempted to offer a police report prepared by the detective containing
statements made by Chico regarding the conduct of, and statements made by, his
half-brother, Reyes, around the time of the incident.  The State objected on
hearsay grounds, and the trial court sustained the objection.  Appellant
attempted to have the evidence admitted under the Rule 803(8)(c) exception to
hearsay, but the trial court refused the request.

Rule 803(8)(c) of the Texas Rules of Evidence provides that
in criminal cases as against the state, Afactual findings
resulting from an investigation made pursuant to authority granted by law@ are excepted from
the hearsay rule Aunless the sources of information or other
circumstances indicate lack of trustworthiness.@  Tex. R. Evid.
803(8)(c).  First, the portions of the report appellant attempted to offer were
not Afactual findings.@  Chico=s statements were
neither factual findings resulting from an investigation or opinions nor
conclusions based on such findings.  See Beech Aircraft Corp. v. Rainey,
488 U.S. 153, 170 (1988) (finding, under Federal Rule of Evidence 803(8)(c),
which the Texas rule derives from, that opinions and conclusions based on a
factual investigation by public officials can be admissible).  Instead,  they
were simply transcribed statements made by a prospective informant.  As such,
that information was outside the scope of the Rule 803(8)(c) hearsay
exception.  See Beech Aircraft,  488 U.S. at 170; McRae v. Echols,
8 S.W.3d 797, 800 (Tex. App.CWaco 2000, pet. denied) (finding in
accordance with Beech Aircraft that the officer=s opinions and
conclusions based on his factual investigations were admissible under
803(8)(c)); Pilgrim=s Pride Corp. v.
Smoak, 134 S .W.3d 880, 892 n.2 (Tex. App.CTexarkana 2004,
pet. denied) (discussing the type of evidence admissible under Rule 803(8)(c)).









Even if the police report itself were admissible, any
statements contained in that report would be subject to the hearsay rule and
would have to qualify under an exception to be admissible.  See Crane v.
State, 786 S.W.2d 338, 354 (Tex. Crim. App. 1990) (holding that even if the
tape itself were admissible under a hearsay exception, any statements made in
that recording were subject to the hearsay rule); Trussell v. State, 585
S.W.2d 736, 739 (Tex. Crim. App. 1979) (finding that if the report were offered
for its truth, and not just for impeachment purposes, then the statements
contained in that report were hearsay and inadmissible).  In this case, Chico=s statements to
Officer Selvera would be hearsay within the hearsay police report itself, and
Chico=s discussion of
statements made by Reyes would  be hearsay within Chico=s hearsay
statements within the hearsay report.  It does not appear that any of the
statements were offered for impeachment purposes, and appellant did not attempt
to show that each level of hearsay qualified under any hearsay exception. 
Therefore, these statements within the report were not shown to be exempt from
the hearsay rule.  Consequently, the trial court did not abuse its discretion
in disallowing the report and the statements contained therein.  We overrule
appellant=s third point of error.  

We affirm the judgment of the trial court.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed July 26, 2007.

Panel consists of
Chief Justice Hedges and Justices Hudson and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  The jury was charged on the law of the parties and
instructed that they were to find appellant guilty of capital murder if they
found that Reyes committed capital murder and that appellant, with the intent
to promote or assist the commission of the offense, solicited, encouraged,
directed, aided, or attempted to aid Reyes to commit the offense.  See Tex. Penal Code 7.02(a)(2).  Therefore,
if the jury were to have accepted appellant=s
theory that Manuel Reyes killed and robbed the complainant, the jury had to
find that Reyes committed the crime alone without sufficient participation (as
defined by Section 7.02(a)) from appellant, otherwise appellant would still be
guilty of capital murder.





[2]  Chico actually testified that appellant and Reyes
walked behind the complainant as he walked away.