# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00034-CR

**Donald Lee Tretter, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 66243, THE HONORABLE JOE CARROLL, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Donald Lee Tretter of murdering his wife. *See* Tex. Penal Code § 19.02(b)(1)–(2). Appellant elected to have the court decide his punishment, *see* Tex. Code Crim. Proc. art. 37.07(2)(b), and the trial judge sentenced him to serve 40 years in the Texas Department of Criminal Justice. *See* Tex. Penal Code § 12.32. On appeal, appellant asserts that the evidence is insufficient to support his conviction, the State violated the court's order excluding extraneous-offense evidence, his trial counsel rendered ineffective assistance, and the trial court erred in denying his request for a lesser-included-offense instruction in the jury charge. The parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial. Accordingly, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.4. We affirm the trial court's judgment of conviction.

## DISCUSSION

### Sufficiency of the Evidence

In two alternative paragraphs, appellant was charged by indictment with the murder of his wife, Lou Tretter. In the first paragraph, the State alleged that he intentionally or knowingly caused the death of Lou by striking or hitting her with a deadly weapon ("his hands or fists," "his foot," or "an object unknown to the Grand Jury") or by throwing, pushing, or slamming her against a deadly weapon ("an object unknown to the Grand Jury"). *See* Tex. Penal Code § 19.02(b)(1). In the second paragraph, the State alleged that, with intent to cause serious bodily injury to Lou, appellant committed an act clearly dangerous to human life—striking or hitting her with a deadly weapon ("his hands or fists," "his foot," or "an object unknown to the Grand Jury") or throwing, pushing, or slamming her against a deadly weapon ("an object unknown to the Grand Jury")—that caused Lou's death. *See id.* § 19.02(b)(2). In his first point of error, appellant asserts that the evidence is insufficient to support his conviction for murder because it fails to prove that he acted with the requisite culpable mental state. In his original brief, he focuses solely on whether the State proved intentional or knowing murder under section 19.02(b)(1), asserting that the evidence fails to show that he "intentionally and knowingly killed his wife."[1] In his reply brief, appellant expands his

---

[1] Appellant initially asserted in his brief that "[t]he legal and factual evidence was insufficient at trial [to show] that the defendant knowingly and intentionally killed the victim as required by Tex. Penal Code § 19.02(b)(1)." At the conclusion of his argument, appellant claims that "the trial court erred when it did not grant appellant's motion for a directed verdict because the State did not prove beyond a reasonable doubt the essential element of § 19.02(b)(1) that [he] intentionally and knowingly killed the victim." Overall, we construe appellant's first point of error as a challenge to the legal sufficiency of the evidence. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (appellate courts no longer employ distinct legal and factual sufficiency standards when reviewing sufficiency of evidence to sustain criminal conviction); *Williams v. State*,

2

argument to include murder under section 19.02(b)(2), contending that the evidence fails to show his intent to inflict serious bodily injury on Lou.

When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). "It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

Murder, under section 19.01(b)(1) or (b)(2), is a "result of conduct" offense, which requires that the culpable mental state relate to the result of the conduct, i.e., the causing of the death. *See Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *Roberts v. State*, 273 S.W.3d 322, 328–29 (Tex. Crim. App. 2008); *Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994). A person acts "intentionally" with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *See* Tex. Penal Code § 6.03(a). A person acts

_____

937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (appellate court treats complaint about trial court's failure to grant motion for directed verdict as challenge to legal sufficiency of evidence).

"knowingly" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

The evidence at trial showed that appellant and his wife had a friend over to their home for dinner the evening of October 17, 2009. When the friend left at approximately 11:00 p.m., Lou was fine, although perhaps a bit intoxicated. The evidence also reflected that appellant was alone with Lou from that point on until he called 911 shortly after 7:30 the next morning to report that his wife was having a seizure and to request medical assistance. He indicated that he woke up and found Lou on the floor unresponsive. Upon arrival, the emergency first responders found Lou lying on the living room floor unresponsive with symptoms indicating a severe head injury.[2] Due to the severity of her condition, Lou was transported by helicopter to Scott & White hospital where she underwent an emergency craniotomy.[3] Following surgery, she was placed on life support. Several weeks later, her family removed her from life support, and on November 2, 2009, Lou died.

The medical evidence at trial showed that Lou sustained multiple injuries and died as a result of fatal head trauma. Dr. Robert Greenberg, the emergency room doctor at Scott & White, treated Lou upon her arrival at the hospital. He testified that Lou had multiple traumatic injuries, including life-threatening head injuries. Lou's CAT scan revealed a skull fracture, an epidural hematoma due to bleeding from a ruptured artery, a midline shift (the shifting of the brain to

---

[2] All of the emergency medical responders testified that they found appellant's explanation that Lou had fallen to be inconsistent with the injuries they observed. Accordingly, they reported the incident to law enforcement.

[3] The medical examiner's testimony explained that a craniotomy is a surgical procedure in which a bone flap from the skull is temporarily removed to gain access inside the skull for some reason; in this case to remove an expanding blood clot that was putting pressure on Lou's brain.

accommodate high levels of pressure in the brain), and injury to the brain itself. There was evidence of a "sheer injury" which is an injury to the brain tissue itself resulting from high velocity, high speed significant injuries. Dr. Greenberg testified that this type of injury is commonly seen with motor vehicle accidents or being struck in the head with a baseball bat, not a fall from a couch. Lou also had blunt trauma injuries on her body, including bruising on her torso and extremities. The hospital contacted law enforcement because the medical assessment of Lou's injuries indicated that she was "someone who had been severely assaulted." Dr. Greenberg testified that the blunt trauma injuries to Lou's body and head reflected multiple events rather than just one. He testified that sheer injury cannot result from a relatively mild impact, indicating that it would "very, very unusual" and "very, very improbable" for it to result from a fall from a standing position. He opined that Lou's injuries were significant inflicted injuries, "not just what gravity does."

Dr. Evan Matshes, a medical examiner from the South Western Institute for Forensic Sciences in Dallas, performed the autopsy on Lou. He concluded that Lou died as a result of blunt head trauma and determined that the manner of her death was "homicide." In addition to the blunt head trauma, the doctor observed blunt trauma on her trunk and extremities. He testified about numerous injuries inflicted on Lou, including significant bruising on her arms, across her back, her chest, both hips, and her legs. He characterized the bruising on her back and chest as extensive, explaining that the bruises in several locations passed through the skin all the way through the musculature to the actual bone. This demonstrated to him that a significant amount of force had been applied to Lou. The doctor also indicated that the bruising on her left upper buttocks was a pattern injury caused by a distinct object, which could be "any type of hard, angular object that has

5

a long shape that strikes the skin with a significant amount of force." He also testified that Lou had fracture of the chest wall that could be the result of trauma due to impact or, alternatively, the result of CPR.

In describing Lou's head injuries, Dr. Matshes testified that Lou had a skull fracture, extensive subarachnoid hemorrhages, and bruises to the brain itself. He detailed her brain injuries, including the subarachnoid hemorrhages in multiple locations in the brain, which are classically associated with trauma. He stated that the many bleeds in many different locations meant many different blows to the head. He opined that Lou sustained "at least three" impacts to her head. He indicated that the bruises to the brain's surface require physical blunt impact of the brain against the inner lining of the skull as the head is moving. He found bleeding in different parts of Lou's brain in classic locations for sheering-type brain injuries. He testified that you cannot get "sheer injury" from just falling down. He agreed with Dr. Greenberg's statement that a sheer injury commonly results from motor vehicle accidents or being struck in the head with a baseball bat, and added falling from a "great height" to the force necessary to cause such an injury, a "profound concussive force." He said that it took "severe forces" to cause the injuries he saw on Lou. He opined that Lou's most serious injuries were "inflicted injuries" and agreed that being struck with hands, a fist, a foot, or some kind of object, or being thrown, shoved, or pushed into an object were all possibilities for inflicting her injuries. Finally, Dr. Matshes expressed that Lou's injuries were not consistent with a fall from a couch or collapsing from a standing position during a seizure.

In his sufficiency challenge, appellant argues that the State failed to prove that he acted with the requisite culpable mental state. We disagree. The State may prove a defendant's

criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). Intent can be inferred from the extent of the injuries to the victim, the method used to produce the injuries, and the relative size and strength of the parties. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck).

Here, the evidence in the record supports the inference that appellant caused his wife's death, or caused serious bodily injury to his wife and committed an act that caused her death, with the requisite culpable mental state. The fatal injuries were inflicted on Lou sometime after the Tretters' friend left Friday night and before emergency responders arrived at appellant's house the next morning. Appellant was the sole person with his wife during the time she sustained blunt force trauma all over her body, including multiple severe and fatal head injuries. The jury could infer appellant's intent or knowledge from the evidence of the injuries inflicted on Lou—the severity of the head trauma (reflecting at least three impacts to her head) in connection with the other blunt force injuries on her body. *See Patrick*, 906 S.W.2d at 487; *see also Moore v. State*, 969 S.W.2d 4, 16 n.5 (Tex. Crim. App. 1998) (Keller, J. concurring and dissenting) ("The extent of a victim's injuries is, of course, a reflection of the strength of a defendant's attack[.]"). The method of producing the injuries also supports the inference that appellant intentionally or knowingly caused Lou's death or intentionally caused serious bodily injury to Lou. *See Patrick*, 906 S.W.2d at 487. Both medical experts testified that Lou's blunt force injuries, including the blunt force head injuries, were consistent with multiple impacts: blows with a hand, foot, or other blunt object, or being struck against an object. Both experts also testified that Lou's injuries resulted from significant and severe

7

force, similar to a car accident, being struck with a baseball bat, or falling from a great height. Further, the jury could infer appellant's intent and knowledge from the size and strength differential between appellant and his wife. *See id.*; *Duren*, 87 S.W.3d at 724. The jury heard testimony regarding Lou's height and weight and saw photographs of her in recent years depicting her diminutive stature.[4] When appellant, an adult male, appeared at trial, the jury could see the disparity between appellant and his wife.[5] The record amply demonstrates appellant's intent or knowledge to cause death and his intent to cause serious bodily injury and supports the jury's conclusion that Lou sustained her fatal injuries from violent acts of abuse perpetrated by her husband, not from a fall from a couch or collapsing during a seizure as appellant suggests.

Appellant complains that "[t]here was no physical evidence to connect appellant to his wife's injuries, nor was any weapon found which remotely resembled the kind of weapon Dr. Matshes said caused the injuries" and that "[t]he State . . . intimated that appellant had beaten his wife to death, but produced no physical evidence or motive during its case-in chief." However, direct evidence, including "physical evidence" or a weapon, is not required to prove guilt.[6] *See Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) ("Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone

---

[4] Lou's daughter testified that Lou was "tiny," indicating that she was 4'11" and "usually weighed between 95, maybe 100 pounds." The autopsy report indicated that Lou measured 4'11" and weighed 117 pounds at the time of autopsy.

[5] The record reflects that appellant was significantly taller than his wife and weighed over 200 pounds.

[6] We also note that the medical examiner described the weapon in connection with the pattern injuries on Lou's back, not the fatal injuries to her head.

can be sufficient to establish guilt.") (quoting *Hooper*, 214 S.W.3d at 13); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Further, "[m]otive is not an essential element of a criminal offense. Therefore, motive need not be proved in order to establish the commission of the offense." *Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex. Crim. App. 1972); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Nor is direct evidence of the requisite culpable mental state required. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). In fact, the requisite culpable mental state is almost always proved by circumstantial evidence. *Stobaugh v. State*, 421 S.W.3d 787, 862 (Tex. App.—Fort Worth 2014, no pet.); *see Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991) ("[M]ental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs."); *Tottenham v. State*, 285 S.W.3d 19, 28 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("[B]oth intent and knowledge may be inferred from circumstantial evidence and proof of a culpable mental state almost invariably depends on circumstantial evidence."). Moreover, in making these arguments, appellant emphasizes particular evidence not in the record. In reviewing the sufficiency of the evidence, however, we consider whether the jury's finding of guilt was justified considering the evidence that was admitted at trial, not what evidence is absent from the record.

We also observe that a substantial portion of appellant's argument focuses on the prosecution theory as presented in closing argument. Appellant maintains that the State's argument is inconsistent with an intentional or knowing mental state in either causing death or inflicting

9

serious bodily injury.[7]  However, in assessing the legal sufficiency of the evidence we must consider all the *evidence* in the light most favorable to the verdict.  *See Anderson*, 416 S.W.3d at 888.  The State's prosecution theory or interpretation of the evidence as presented in jury argument are not relevant in a sufficiency analysis.  Based on the evidence presented at trial and the reasonable inferences therefrom, we conclude that the jury could have rationally concluded that appellant (1) intentionally or knowingly caused his wife's death or (2) intending to cause serious bodily injury to his wife, committed an act clearly dangerous to human life that caused her death.[8]  *See Gardner*, 306 S.W.3d at 285 (State may prove defendant's criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence).  Accordingly, we hold that the evidence is sufficient to support appellant's conviction for murder.  *See Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13.  We overrule appellant's first point of error.

## Extraneous-Offense Evidence

Before trial, appellant filed a *Motion in Limine-Extraneous Offenses* asking the court to "enter an order instructing the State, its agents, its employees and its witnesses not to mention,

---

[7] Appellant maintains that the State's "fight" theory—that appellant got into a fight with his wife to "teach her a lesson"—necessarily precludes the intent to kill because it "does not permit a reasonable finding that appellant had a specific, pre-fight intent to either kill or hurt his wife[.]"  This argument suggests that the State was required to prove planning or premeditation on the part of appellant.  Premeditation, however, is not an element of murder.  *Crane v. State*, 786 S.W.2d 338, 345 (Tex. Crim. App. 1990); *see Rousseau v. State*, 855 S.W.2d 666, 674 (Tex. Crim. App. 1993) ("[Defendant] must only have formulated an intent to cause death when he actually commits the murder.").

[8] Once again, because the parties are familiar with the evidence adduced at trial, we do not recite all of the evidence supporting appellant's conviction in our analysis.  Rather, we limit our recitation to the evidence that is relevant to appellant's particular sufficiency challenge.

allude to or refer to in any manner any extraneous offense(s) by [appellant] in this cause in the presence of the jury." The motion also asked the court to conduct a hearing outside the presence of the jury prior to the mention of extraneous offenses. The State indicated that it did not object to the motion and the trial court granted the motion. Construing the trial court's ruling on his motion in limine as an order to exclude evidence that Lou had a black eye on two prior occasions, appellant complains in his second point of error about the admission of this "black eyes" evidence.

This point of error presents nothing for our review. First, the above-quoted language from appellant's pre-trial motion clearly indicates that the motion was a motion in limine, not a motion to suppress. *See Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd) (motion in limine "is a motion requesting that the opposing party be directed to approach the trial court before offering certain types of evidence, asking certain questions, or otherwise going into particular areas before the jury"). As a result, the motion failed to preserve error. *See Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (motion in limine does not preserve error). Second, appellant did not object when the now complained-of evidence was offered. Thus, he failed to preserve his complaint about the admission of the evidence for appellate review.[9] *See* Tex. R. App. P. 33.1(a) (to preserve complaint for appellate review, party must have presented specific and timely request, motion, or objection to trial court and, further, must have obtained adverse ruling). We overrule appellant's second point of error.

---

[9] In his reply brief, appellant's counsel concedes the failure to preserve error as to the admission of the extraneous-offense evidence but asserts that he "has an obligation to raise the issue on behalf of his client" notwithstanding the failure to meet the preservation requirement of "this established rule under Rule 33.1(a) of the Texas Rules of Appellate Procedure."

**Ineffective Assistance**

In his third point of error, appellant asserts that his trial attorney rendered ineffective assistance because he (1) failed to object to the admission of extraneous-offense evidence, (2) failed to properly cross-examine the witness through whom such evidence was introduced, and (3) engaged in a defense strategy that allowed for the admission of such evidence which undermined the defense.

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must indulge a strong presumption that counsel's representation falls within the wide range of reasonable professional assistance—that is, we must presume that trial counsel's actions or inaction and decisions were reasonably professional and motivated by sound trial strategy. *Strickland*, 466 U.S. at 686; *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield*, 363 S.W.3d at 592 (citing *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The mere fact that another attorney might have pursued a different course of action at

12

trial does not suffice to prove a claim of ineffective assistance of counsel. *Harris v. State*, 125 S.W.3d 45, 54 (Tex. App.—Austin 2003, pet. ref'd, untimely filed); *see Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012), *cert. denied*, 133 S. Ct. 834 (2013).

Direct appeal is usually an inadequate vehicle for raising a claim of ineffective assistance because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93. This is particularly true with regard to the "deficient performance" prong of the inquiry, when counsel's reasons for failing to do something do not appear in the record. *Id.* at 593. Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Id.* "If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

The complaints about trial counsel's assistance raised in this point of error relate to the admission of extraneous-offense evidence (particularly what appellant calls the "black eyes" evidence) during the guilt-innocence phase of trial. During its case-in-chief, the State questioned several witnesses about whether they had ever seen Lou Tretter with a black eye. The testimony reflects that on two separate occasions within the year prior to her death, witnesses saw Lou with a black eye. In the first instance, she explained that she had walked into a door or door frame. In the second instance, both Lou and appellant explained that appellant had somehow "bopped" Lou with his elbow or forearm during his sleep one night. Appellant asserts that the State offered this evidence to infer that appellant had physically abused his wife. He contends that his trial attorney was ineffective for allowing the admission of this evidence by the State as well as in questioning

13

defense witnesses about the "black eyes" evidence because it undermined the defense strategy of showing that appellant and his wife had a loving and happy marriage. Appellant also complains that his attorney was ineffective for calling a sheriff's deputy as a witness to testify about his prior arrest of Lou for her assault against appellant because this evidence opened the door for the State to offer further evidence about several domestic disturbance calls to the Tretter residence between May and July of 2009. This, appellant claims, was contrary to the defense that the Tretters had a good, loving, and happy marriage.

Initially, we note that the evidence about which appellant complains—the "black eyes" evidence, Lou's arrest, and the 911 calls—does not constitute evidence of extraneous offenses or bad acts committed by appellant. Though the State referred to it as such during closing argument, the actual testimony about Lou's black eyes was that the witnesses were told, by either Lou or appellant or by both, that her black eyes were the result of accidents: Lou accidentally walking into a door frame and appellant accidentally hitting Lou when he turned over in his sleep. Lou's arrest demonstrated bad conduct by Lou, not appellant. The testimony about the 911 calls reflects that during the three-month period of May, June, and July of 2009, four 911 calls were made and "there were times when the 911 caller was male and there were times when the 911 caller was female." Police responded to the residence, but no action was taken, that is, no one was arrested.

Nevertheless, even if the evidence is construed as evidence of appellant's extraneous bad conduct, such evidence was admissible to show the nature of appellant's relationship with Lou.

14

*See* Tex. Code Crim. Proc. art. 38.36(a);[10] *Garcia v. State*, 201 S.W.3d 695, 703 (Tex. Crim. App. 2006) (concluding that in cases in which prior relationship between victim and accused is material issue, evidence of prior bad acts may be admissible for purpose of illustrating nature of relationship). Here, the circumstances surrounding the relationship between appellant and his wife at the time of the killing were relevant evidence under Article 38.36(a) and evidence indicating that appellant had been physically abusive toward Lou was admissible under Rule 404(b) for the purpose of illustrating the nature of their relationship. *See Garcia*, 201 S.W.3d at 704; Tex. Code Crim. Proc. art. 38.36(a); Tex. R. Evid. 404(b). Thus, trial counsel's performance was not deficient for failing to object to the evidence or for offering such evidence in the defense case.

Furthermore, the record does not reflect why appellant's trial counsel did not object to the State's admission of this evidence or why counsel pursued the admission of this evidence on behalf of the defense. Not objecting to or offering the evidence could very well have been trial strategy on the part of counsel. While appellant laments in his brief that evidence of prior altercations between appellant and Lou, particularly the "black eyes" evidence, undermined the defense strategy, such is not necessarily the case. The record reflects that at the time she died, and

---

[10] Specifically, Article 38.36(a) of the Code of Criminal Procedure provides that

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

Tex. Code Crim. Proc. art. 38.36(a).

for some time prior, Lou had both physical and mental health issues. She suffered from some type of vertigo-like illness that affected her balance as well as depression and mood swings. The record also reflects that appellant and Lou's relationship spanned more than two decades,[11] but the only instances of discord (the 911 domestic disturbance calls and Lou's arrest) occurred in the five-month period before she died and the only evidence of physical injury to Lou (her two black eyes) occurred during the time frame when she suffered problems with her balance.[12] Trial counsel could very well have wanted this evidence admitted to show the non-abusive nature of appellant's relationship with his wife over the long term as well as to offer an alternative explanation for Lou's injuries.

Absent record evidence regarding trial counsel's strategy, appellant cannot rebut the strong presumption of reasonable assistance. The complained-of failures relating to the extraneous-offense evidence, without explanation for trial counsel's decisions, do not compel a conclusion that counsel's performance was deficient. We cannot say that "no reasonable trial strategy could justify" counsel's decision to not object to the complained-of evidence or to offer such evidence in appellant's defense. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Nor can we conclude that counsel's conduct was "so outrageous that no competent attorney would

---

[11] Appellant's son testified that he considered Lou to be his "real mother" because she raised him since he was four. He was 31 when he testified at trial.

[12] The evidence reflected that as a result of her medical condition, Lou often bumped into things and even walked directly into walls. At a doctor's visit on May 29, 2009, she complained about "easy bruising."

16

have engaged in it." *See Menefield*, 363 S.W.3d at 592. We find that appellant has failed to demonstrate deficient performance on the part of his trial counsel.[13]

Because appellant has failed to make the required showing of deficient performance, his claim of ineffective assistance fails. We overrule appellant's third point of error.

## Lesser-Included-Offense Instruction

The jury charge on guilt-innocence included instructions on the two indicted theories of murder: (1) intentionally or knowingly causing the death of Lou, and (2) with the intent to cause serious bodily injury, committing an act clearly dangerous to human life that caused Lou's death. During the charge conference, appellant objected to the omission of an instruction on the lesser-included offense of manslaughter. The trial court overruled his objection and denied his request to include a manslaughter instruction. In his fourth point of error, appellant argues that the trial court erred in denying his request.

In his original brief, appellant argues that the trial court should have instructed the jury on the lesser-included offense of "voluntary manslaughter"—death caused under the immediate influence of sudden passion arising from adequate cause. *See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, sec. 19.03, 1973 Tex. Gen. Laws 883, 913, *amended by* Act of May 28, 1973, 63d Leg., R.S., ch. 426, § 1, sec. 19.04, 1973 Tex. Gen. Laws 1122, 1124, *repealed by* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3613–14

---

[13] Because appellant failed to meet his burden on the first prong of *Strickland*, we need not consider the requirements of the second prong—prejudice. *See Lopez v. State*, 343 S.W.3d 137, 144 (Tex. Crim. App. 2011).

(former Penal Code section 19.04, statute setting forth offense of voluntary manslaughter). He contends that the State's prosecution theory demonstrates "provocation" and an "agitated state of mind" rendering appellant incapable of cool reflection.[14]

Prior to September 1, 1994, whether a defendant committed murder under the immediate influence of sudden passion arising from an adequate cause was an issue that was litigated at the guilt-innocence phase of the trial. *Wooten v. State*, 400 S.W.3d 601, 604 (Tex. Crim. App. 2013); *Trevino v. State*, 100 S.W.3d 232, 236 (Tex. Crim. App. 2003) (per curiam). If the evidence raised the issue of sudden passion, the question was submitted to the jury in the court's charge and the jury had the option of finding the defendant guilty of the lesser offense of voluntary manslaughter. *Wooten*, 400 S.W.3d at 604–05. However, the legislature acted in 1993 to remove the crime of voluntary manslaughter from the Texas Penal Code. *See* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3613–14. Voluntary manslaughter is no longer a separate offense in the Penal Code, having been replaced with the sudden-passion mitigation defense in section 19.02(d). *See* Tex. Penal Code § 19.02(d); *Moore*, 969 S.W.2d at 8 n.1 (discussing legislature's repeal of voluntary manslaughter statute and movement of sudden passion issue from guilt phase of trial to punishment phase). Under the current statutory scheme, the question of whether a defendant killed while under the immediate influence of sudden passion is a punishment issue. *Wooten*, 400 S.W.3d at 605. Thus, appellant's argument in his original brief that

---

[14] In this point of error, appellant interprets the State's prosecution theory as being that Lou was intoxicated and could have provoked appellant into a physical altercation, characterizing it as "the drunken fight . . . that escalated into a killing" whereas in his first point of error he characterized it as a "fight" to "teach her a lesson."

the trial court should have instructed the jury on the non-existent offense of voluntary manslaughter is without merit.

In his reply brief, appellant asserts that the State's jury argument suggesting that appellant killed his wife during a "drunken brawl" supports the inference that he acted recklessly when he "slammed his wife into some 'unknown object' inflicting the deadly injuries that resulted in her death." Thus, he maintains that the trial court should have submitted a lesser-included-offense instruction on "reckless" manslaughter.

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). Determining whether a defendant is entitled to a lesser-included-offense instruction requires a two-part analysis. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). We first consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535. If so, we must decide whether the admitted evidence supports the instruction. *Goad*, 354 S.W.3d at 446; *Rice*, 333 S.W.3d at 144.

Neither party disputes that manslaughter is a lesser-included offense of murder as charged in the indictment here, *see Cavazos*, 382 S.W.3d at 384; *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003), so we proceed to the second prong. Under this prong, we must consider whether there was some evidence raised at trial from which a rational jury could

19

acquit appellant of the greater offense of murder and convict him of the lesser-included offense of manslaughter. *Cavazos*, 382 S.W.3d at 385; *see also* Tex. Penal Code §§ 19.02(b)(1) (person commits offense of murder if he intentionally or knowingly causes death of individual), 19.02(b)(2) (person commits offense of murder if he intends to cause serious bodily injury and commits act clearly dangerous to human life that causes death of individual), 19.04(a) (person commits offense of manslaughter if he recklessly causes death of individual). We must determine if there is some evidence in the record that would permit a jury to rationally find that, if appellant is guilty, he is guilty only of manslaughter. *See Rice*, 333 S.W.3d at 145; *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006).

The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Rice*, 333 S.W.3d at 145 (quoting *Hall*, 225 S.W.3d at 536); *Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008). We consider all of the evidence admitted at trial, not just the evidence presented by the defendant. *Goad*, 354 S.W.3d at 446; *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). "Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). We may not consider the credibility of the evidence or whether it conflicts with other evidence or is controverted. *Goad*, 354 S.W.3d at 446–47. However, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Sweed*, 351 S.W.3d at 68 (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). Meeting this threshold

20

requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense. *Cavazos*, 382 S.W.3d at 385.

The critical issue here is on the element of intent. As indicted, the State needed to prove that appellant acted intentionally or knowingly in causing the death of his wife, according to the first paragraph, or that he intended to cause serious bodily injury to his wife, according to the second paragraph. *See* Tex. Penal Code § 19.02(b)(1)–(2). Manslaughter would require proof that appellant recklessly caused Lou's death. *See id.* § 19.04. A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c). The question is whether the record before us provides more than a scintilla of evidence that, if appellant is guilty, he is guilty only of manslaughter, that is, recklessly causing the death of his wife. *See Schroeder*, 123 S.W.3d at 400. There must be some affirmative evidence that appellant did not intend to cause death or serious bodily injury when he inflicted multiple fatal head injuries on Lou, as well as some affirmative evidence from which a rational juror could infer that appellant was aware of but consciously disregarded a substantial and unjustifiable risk that death would occur as a result of his conduct. *See Cavazos*, 382 S.W.3d at 385.

Appellant points to no evidence, and our review has found none, showing appellant did not intentionally or knowingly cause Lou's death or intend to cause serious bodily injury to Lou but acted only recklessly. The evidence he relies on does not demonstrate that appellant was reckless as to the result of his conduct. Appellant refers to "Lou Tretter's documented history of family

21

violence toward appellant and her repeated expressed hostility/dissatisfaction to others about appellant" as some evidence of his recklessness. He fails to explain, and we cannot discern, how this evidence, which reflects Lou's conduct and feelings, demonstrates appellant's reckless mental state as to the serious bodily injury he inflicted on Lou. Moreover, we find no evidence that establishes the lesser-included offense as a valid, rational alternative to intentionally or knowingly causing death or causing death during the intentional infliction of serious bodily injury. As previously discussed, both medical experts testified about the significant force and multiple blows required to produce the severe injuries Lou suffered, including her fatal head trauma. Given the severity of Lou's head injuries (resulting from multiple impacts) in connection with the blunt force trauma on her trunk and extremities, we conclude that no rational jury could find that appellant was only reckless about causing them.

In sum, the record in this case does not support a charge of manslaughter. Appellant cites no evidence of recklessness and the record does not contain evidence that would have permitted the jury to reach a rational conclusion that if guilty, appellant was guilty only of recklessly causing Lou's death. Consequently, the trial court did not err in denying appellant's requested jury-charge instruction on manslaughter.[15] We overrule appellant's fourth point of error.

## CONCLUSION

Having overruled appellant's four points of error, we affirm the trial court's judgment of conviction.

---

[15] Because we find no error in the jury charge, we need not conduct a harm analysis. *See Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009).

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   August 7, 2014

Do Not Publish