**Opinion issued July 2, 2019**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-18-00461-CR**

**NO. 01-18-00462-CR**

———————————

**GILBERTO ANTONIO GUILLEN-HERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 458th District Court**
**Fort Bend County, Texas**
**Trial Court Case Nos. 16-DCR-075926 & 17-DCR-076852**

---

## MEMORANDUM OPINION

Appellant, Gilberto Antonio Guillen-Hernandez, was found guilty by a jury

of the continuous sexual abuse[1] and sexual assault[2] of his minor daughter,

---

[1]    *See* TEX. PENAL CODE § 21.02 (continuous sexual abuse).

"Martha."[3] The jury assessed Appellant's punishment at life in prison for the continuous-sexual abuse offense and at 20 years for the sexual-assault offense. Appellant appeals both judgments of conviction.[4] In a single issue, raised in both appeals, Appellant argues that the trial court abused its discretion when it overruled his hearsay objection to the testimony of the outcry witness because Martha made the outcry through a Spanish-language interpreter.

We affirm both judgments of conviction.

## Background

Martha is Appellant's biological daughter. When she was 13 years old, Martha emigrated to Texas from El Salvador. Martha lived in El Salvador with her mother, but her mother did not come to Texas. Appellant already lived in Texas with his girlfriend, her children, and Martha's half-sibling. Even though she had not seen Appellant since she was four years old, Martha moved in with Appellant and his family, who were living in a small trailer in Fort Bend County.

About a week after her arrival, Appellant sexually abused Martha by reaching under her clothes to massage her breasts and her vagina. Two months

---

[2] *See id.* § 22.011 (sexual assault).

[3] "Martha" is a pseudonym used to protect the identity of the child complainant.

[4] Appellate cause number 01-18-00461-CV corresponds to trial court cause number 16-DCR-075926 (continuous sexual abuse), and appellate cause number 01-18-00462-CR corresponds to trial court cause number 17-DCR-076852 (sexual assault).

later, the family moved to a larger trailer home where Martha lived with Appellant from the ages of 13 to 15. She later testified at trial that, there, Appellant sexually abused her "many times" in multiple ways, including putting his penis and his fingers in her vagina and engaging in oral sex with her.

Martha did not tell anyone about the sexual abuse until she was 15 years old. She revealed to a teacher that Appellant was sexually abusing her, but she did not provide details of the abuse. The teacher contacted Child Protective Services (CPS) and reported the sexual abuse. CPS investigator, K. Amos, was sent to interview Martha at her school.

Amos learned that Martha did not speak English well because her native language was Spanish. Amos spoke some Spanish, but she was not proficient in the language. Amos needed a Spanish-English translator to interview Martha. Amos used a translator with Language Line, a translation company CPS commonly used and which Amos had used many times. During the interview, Amos and Martha were in a room together, and the translator was on speaker phone, translating both sides of the interview. Using her computer, Amos transcribed word-for-word what the translator was relaying as Martha's answers. Amos also made an audio recording of the interview on her computer, which she password protected.

The day after the interview, Martha underwent a sexual assault examination at the hospital. Using a Spanish-English translator, Martha told medical personnel

3

during the examination that Appellant had started abusing her one or two weeks after she arrived in Texas. She said that the abuse had continued for two years, occurring two to three times per week.

Martha also reported to the doctor that the most recent sexual abuse had occurred two days earlier. During the examination, medical staff swabbed Martha's vagina and collected her underwear to preserve biological evidence. A forensic examination revealed the presence of semen on Martha's vaginal swab and in the crotch of her underwear.

Appellant's sexual abuse of Martha was reported to the Fort Bend County Sheriff's Office, which investigated the report. A search warrant was obtained for Appellant's cell phone. A photograph, taken in Martha's bedroom, was found on the phone. It showed Martha holding Appellant's erect penis.

A buccal swab was taken from Appellant for DNA analysis. A comparison of Appellant's DNA with the DNA profile obtained from the semen found in Martha's underwear showed that it was 9.52 septillion times more likely that the semen came from Appellant than an unknown person.

Martha also reported that Appellant had taken her to a motel to have sex. The police obtained surveillance video from the motel where Martha said Appellant had taken her. The surveillance video showed Appellant and Martha

4

walking toward a motel room. A receipt obtained from the motel confirmed that Appellant had rented a room that day.

Appellant was charged with the offenses of continuous sexual abuse and sexual assault. Pursuant to Code of Criminal Procedure article 38.072, the trial court conducted a pretrial hearing to determine whether CPS investigator Amos could testify at trial as an outcry witness.[5] *See* TEX. CODE CRIM. PROC. art. 38.072. Amos testified at the hearing regarding the circumstances and content of the outcry. She testified about her use of the Spanish-English interpreter from Language Line to interview Martha. Amos also stated that she audio-recorded the interview on her computer.

At the end of the hearing, Appellant objected that Amos should not be permitted to testify as the outcry witness because Martha had not made a timely outcry. Appellant also objected to Amos's testimony on the basis that Amos could not verify the accuracy of the Spanish-English translation of Martha's outcry statement.

---

[5] Code of Criminal Procedure article 38.072 provides that, regarding certain sexual offenses involving children under the age of 14, the first statement by the child to a person 18 years of age or older, other than the defendant, that describes the alleged offense is not inadmissible hearsay if other statutory requirements are met. TEX. CODE CRIM. PROC. art. 38.072, § 2(a)–(b) (setting out requirements, including that trial court must find that statement is "reliable based on the time, content, and circumstances of the statement"); *see Martinez v. State*, 178 S.W.3d 806, 811 (Tex. Crim. App. 2005) ("Article 38.072 is a rule of evidence admissibility, allowing trial courts to admit some hearsay statements in the prosecution of certain offenses against children when those statements are made under the specified conditions.").

The trial court overruled Appellant's objections to Amos's testimony. The trial court made findings of fact and conclusions of law in which it concluded that Amos was the proper outcry witness and that Martha's outcry statement was admissible. In support of its ruling, the court found that Amos met the statutory requirements of Article 38.072. It also found that Amos "commonly used" Language Line translation service "to speak with Spanish speakers." And the court found that Amos "indicated that Martha . . . appeared to understand the translation."

At trial, Appellant again objected to Amos's testimony about Martha's outcry. Appellant argued that Amos's testimony constituted "double hearsay" because it was derived from the Language Line interpreter's Spanish to English translation of Martha's outcry statements. Appellant questioned the translation's reliability and accuracy because the audio recording that Amos made of Martha's outcry could not be accessed. Amos had password protected the recording and could not remember the password, so the recorded interview could not be played. Appellant argued that, because he could not listen to the recorded interview, there was no way to insure the translation's accuracy and reliability.

Outside the presence of the jury, the trial court conducted a hearing to determine the admissibility of Amos's testimony. After Amos was questioned on voir dire, the court found the translation to be reliable and overruled Appellant's

6

hearsay objection, permitting Amos to testify about Martha's outcry as translated by the Language Line interpreter.

Amos testified at trial that Martha told her that Appellant "had touched her with his hands, with his penis." Amos stated that Martha "said [Appellant] had put his mouth on her intimate parts. [Martha] said that she had been made to put her mouth on his penis. And she said that it had been happening for two years," beginning when Martha was 13. Martha told Amos that the sexual abuse happened at home and that it happened "all the time." Amos testified that Martha told her that Appellant had taken her to a motel two days before the interview to have sex. Amos said that she did not ask Martha "extensive details" about the abuse because she knew Martha would also undergo a separate forensic interview.

Martha also testified at trial. Martha described the sexual abuse by Appellant that she endured from ages 13 to 15. Other State's witnesses included the physician who conducted Martha's sexual assault examination, investigating police officers, and the forensic examiners who processed and analyzed the DNA evidence. In addition, the State offered documentary evidence, including Martha's medical records from the sexual-assault examination and the explicit photo from Appellant's cell phone as well as photographic and documentary evidence to support Martha's claim that Appellant took her to a motel to have sex.

The jury found Appellant guilty of the offenses of continuous sexual abuse of a child and sexual assault. The jury assessed Appellant's punishment at life in prison for the continuous sexual abuse offense and at 25 years in prison for the sexual assault offense. This appeal followed.

## Admission of Amos's Testimony

In his sole issue, Appellant contends that the trial court abused its discretion by overruling his hearsay objection and admitting Amos's testimony regarding Martha's translated outcry statements.[6] Appellant argues that, because the Language Line interpreter's translation was inadmissible hearsay, Amos's testimony regarding the translation should not have been admitted. The State responds that the translation did not add a layer of hearsay because the record shows that Martha authorized the interpreter to speak for her or adopted him as her agent for purposes of the translation of her outcry statement.

### A. Standard of Review

A trial court has broad discretion in determining the admissibility of evidence. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991).

---

[6] Appellant does not contend that Amos's outcry testimony was hearsay because the requirements of Article 38.072 had not been satisfied. To the contrary, at the hearing on the admissibility of Amos's testimony during trial, Appellant's counsel acknowledged that Amos was "the appropriate outcry witness." Appellant's objection to Amos's testimony at trial was that the translation from Spanish to English of Martha's outcry statement added a layer of hearsay to which there was no exception to make it admissible.

Consequently, an appellate court reviews a trial court's decision admitting or excluding evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Saavedra v. State*, 297 S.W.3d 342, 349 (Tex. Crim. App. 2009).

**B.     Applicable Legal Principles**

Hearsay is an out-of-court statement offered for the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay statements are not admissible unless they fall under a recognized exception to the hearsay rule. *Id.* 802, 803. To be admissible, each level of hearsay must fall under an exception. *See Crane v. State*, 786 S.W.2d 338, 353–54 (Tex. Crim. App. 1990).

In the context of translations, the Court of Criminal Appeals has held that an interpreter's translation does not add a layer of hearsay if the interpreter is acting as a "language conduit," translating the statement of one who has authorized him to translate or adopted the interpreter as his agent. *Saavedra*, 297 S.W.3d at 346–47. To determine whether the interpreter was acting as an agent, courts consider the following four factors: (1) who supplied the interpreter, (2) whether the interpreter had a motive to mislead or distort, (3) the qualifications and language skills of the interpreter, and (4) whether actions taken after the translated statement were consistent with the statement. *Id.* at 348.

As the Court of Criminal Appeals noted in *Saavedra*, these four factors not only demonstrate whether the interpreter was acting as an agent and authorized to speak, but also relate to "the ultimate reliability of the proffered evidence—always a core consideration in fashioning any exception to the general rule against admitting hearsay evidence over objection." *Id.* at 349. No one factor is either necessary or sufficient to establish that an interpreter acted as a language conduit; rather, the factors are related and must be considered together. *See Saavedra v. State*, No. 05–06–01450–CR, 2010 WL 2028111, at *4 (Tex. App.—Dallas May 24, 2010, no pet.) (mem. op., not designated for publication) (citing *Saavedra*, 297 S.W.3d at 349)). Finally, the proponent of the evidence bears the burden of demonstrating to the satisfaction of the trial court that, after taking these factors into account, the out-of-court translation is admissible. *Saavedra*, 297 S.W.3d at 349.

## C.  Analysis

Because the interpreter, employed by Language Lines translation service, was supplied by CPS, both sides agree that the interpreter was not supplied by either party in this case.[7] *Cf. Diaz v. State*, No. 08–07–00323–CR, 2010 WL

---

[7]  Although CPS is a state agency, nothing shows that CPS or Amos were working with law enforcement or the prosecution with respect to Martha's outcry statement. *See Wilkerson v. State*, 173 S.W.3d 521, 528–29 (Tex. Crim. App. 2005) (recognizing that law enforcement ferrets out crime, investigates its commissions, arrests perpetrators, and gathers evidence for possible prosecution

10

109703 at *8 (Tex. App.—El Paso 2010, pet. dism'd) (not designated for publication) (indicating that "neither party" supplied CPS caseworker who translated defendant's confession to law enforcement). Thus, the first *Saavedra* factor is neutral, weighing neither in favor of nor against admissibility. *See Moland v. State*, No. 01–10–00869–CR, 2012 WL 403885, at *4 (Tex. App.—Houston [1st Dist.] Feb. 9, 2012, pet. ref'd) (not designated for publication) (determining that, when neither party supplied interpreter, first factor was neutral).

Regarding the second *Saavedra* factor, nothing in the record suggests that the Language Line interpreter had a motive to mislead or to distort Martha's outcry statement. And nothing in the record shows that the interpreter was motivated to provide anything but an accurate translation to Amos. In fact, the trial court could have inferred that the interpreter had an incentive to provide an accurate translation because Amos testified that Language Line is a translation service that CPS commonly uses and that she had used the service "multiple times." Thus, the second factor weighs in favor of admissibility. *See id.* (concluding that lack of evidence that translator had motive to mislead weighed in favor of admissibility); *Diaz*, 2010 WL 109703 at *8 (determining that record supported finding that CPS worker, who acted as interpreter, had no obvious motive to mislead); *see also Trevizo v. State*, No. 08–12–00063–CR, 2014 WL 260591, at *6 (Tex. App.—El

while CPS workers protect welfare and safety of children; usually, CPS and law enforcement run separate but parallel paths).

11

Paso Jan. 22, 2014, no pet.) (mem. op., not designated for publication) (stating that evidence showing that translator was provided as part of hospital's standard operating procedure weighed in favor of translation's reliability and neutrality).

Appellant correctly points out that the State did not offer any evidence regarding the interpreter's identity, qualifications, or language skills. *See Saavedra*, 297 S.W.3d at 348. Nor did the State offer into evidence the business records of Language Line, which may have shown the company's policies, procedures, and standards for its interpreters. The lack of evidence regarding the interpreter's qualifications and skills weighs against a finding of reliability and admissibility under the third factor. *See Han Ok Song v. State*, No. 08–13–00059–CR, 2015 WL 631163, *5 (Tex. App.—El Paso Feb. 13, 2015, no pet.) (not designated for publication).

However, there is evidence in the record indicating that Martha understood the interpreter because Martha's translated responses to Amos's questions were consistent with the questions. *See id.* Amos testified that, during the interview, she transcribed word for word on her computer the interpreter's translation of Martha's responses. When Appellant's counsel asked on voir dire how Amos knew the translated responses were accurate, Amos testified that she knew the responses were accurate because Martha's answers were responsive to her questions. Amos stated, "There wasn't any answers that didn't apply to what I had just asked."

12

Appellant's counsel then asked how Amos knew the "critical details" were accurately translated. Amos responded the "critical details required me to ask follow-up questions. And as I said, everything fit. Nothing was out of the ordinary or out of context."

In addition, Martha testified that she understood the Spanish interpreter's translation. She stated that she communicated with Amos through the interpreter for one to two hours. *See Trevizo*, 2014 WL 260591, at *6 (stating that "strongest indicator" that sexual-assault complainant adopted interpreter as her agent was fact that complainant continued to use interpreter throughout sexual assault examination).

Finally, under the fourth *Saavedra* factor, the record shows "actions taken" after the translation were consistent with the translated statement. *See* 297 S.W.3d at 348. The day after she was interviewed by Amos, Martha underwent a sexual-assault examination at the hospital. Amos testified that Martha "told the forensic nurse exactly what she told me, that her father had oral and vaginal sex with her . . . for the last two years." Amos agreed that the fact that Martha told "other adults" substantively the same information about the sexual abuse that the interpreter had relayed to Amos indicated that the interpreter's translation was accurate. *Cf. Trevizo*, 2014 WL 260591 at *6 (stating that translated statement had "indicia of reliability" because statements relayed by translator were substantively identical to

13

statements given by others to police). The record supports admissibility under the fourth factor.

After applying the four *Saavedra* factors, we conclude that the trial court could have implicitly found that the interpreter was acting as Martha's agent or language conduit during the interview with Amos. We hold that it was within the trial court's discretion to overrule Appellant's hearsay objection and to admit Amos's testimony about Martha's translated statements. *See Driver v. State*, No. 01–07–00386–CR, 2009 WL 276539, at \*6 (Tex. App.—Houston [1st Dist.] Feb. 5, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion in admitting translated statement regarding identification of appellant when first and second factors were neutral, translator demonstrated language abilities in two other police interviews, and witness whose statements were translated was subject to cross-examination at trial where she repeated her identification of appellant through an interpreter).

We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of conviction in each appeal.

                                        Laura Carter Higley
                                        Justice

Panel consists of Chief Justice Radack and Justices Higley and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).